STATE of Maine

v.

Bion B. HATCH, Jr.

Supreme Judicial Court of Maine.

Argued Sept. 8, 1992.
Decided Oct. 7, 1992.

**1300**

R. Christopher Almy, Dist. Atty. and Jeffrey M. Silvestein (orally), Asst. Dist. Atty., Bangor, for the State.

Terrance M. Harrigan (orally), Vafiades, Brountas & Kominsky, Bangor, for defendant.

Before WATHEN, C.J., and GLASSMAN, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

The State appeals from a judgment of the District Court (Bangor, *Mead, J.*) granting the motion to suppress made by the defendant, Bion B. Hatch, Jr. The District Court held that the stop of Hatch by a Bangor police officer was improper under the fourth amendment of the United States Constitution as interpreted by the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). On appeal, the State contends that the District Court erred in suppressing any statements or evidence obtained as a result of the stop. We agree with the State that the officer's conduct in the present case was not violative of the defendant's fourth amendment rights and vacate the judgment of the District Court.

In the early morning hours of May 6, 1991, uniformed Bangor Police Officer Ed Potter was on routine patrol in a marked police cruiser in downtown Bangor. At approximately 3 a.m., Officer Potter observed a vehicle parked next to a local lounge which the officer knew had closed at 1:30 a.m. The officer knew that the vehicle did not belong to the owners of the lounge. Illumination provided by a nearby street light permitted the officer to observe that the defendant and a woman companion occupied the car.

Thereafter, the defendant started the vehicle and drove past Officer Potter out of the parking lot. Officer Potter testified that the defendant had a fixed stare and messy hair. The officer followed the vehicle as it made a slow left turn out of the parking lot. At the next light, the vehicle was positioned in the wrong lane to negotiate a left hand turn, but quickly changed into the appropriate left-turn only lane. The officer then followed the defendant's vehicle as it proceeded over the Joshua Chamberlain Bridge from Bangor to Brewer. Approximately two or three miles later, the defendant drove into the parking lot of the Wilson Street Brewer Dunkin Donuts shop; stopped and alighted from his vehicle.

Officer Potter observed the defendant's inability to maintain his balance while attempting to step from the parking lot to the sidewalk in order to enter the donut shop. Based upon the officer's observations, he suspected the defendant may have been drinking alcohol, and asked the defendant for identification and whether he had had anything to drink. Shortly thereafter, the officer administered field sobriety tests.

The defendant was subsequently arrested and charged with operating under the influence pursuant to 29 M.R.S.A. § 1312–B (Supp.1991). His motion to suppress was granted on the ground that the investigatory stop of the defendant was without articulable suspicion. This appeal followed.

## I.

■■■ The fourth amendment to the United States Constitution and art. I, § 5 of the Maine Constitution protect an individual from unreasonable intrusions by police officers and other governmental agents. *State v. Caron,* 534 A.2d 978, 979 (Me.1987); *State v. Griffin,* 459 A.2d 1086, 1089 (Me.1983). In order to justify a brief detention short of a formal arrest, a law enforcement officer must act on the basis of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The intrusion is justified if the officer has suspicion of "criminal conduct which has taken place, is occurring, or imminently will occur" and the suspicion is reasonably warranted. *Caron,* 534 A.2d at 979 (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880). The level of information held by the officer need not, however, rise to that of probable cause required for an arrest. *Griffin,* 459 A.2d at 1089; *State v. Rand,* 430 A.2d 808, 819 (Me.1981); *State v. Babcock,* 361 A.2d 911, 914 (Me.1976). "In fact, the observed conduct giving rise to the officer's suspicion of criminal activity may be wholly lawful in itself." *Griffin,* 459 A.2d at 1089; *Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980).

■■■ The trial court's decision to suppress the evidence is reviewed only for clear error. *State v. Enggass,* 571 A.2d 823, 824 (Me.1990); *State v. Chapman,* 495 A.2d 314, 317 (Me.1985). We find such error here. In the present case, the police officer had sufficient facts before him to form a basis for his suspicion, specifically, the defendant's late night parking behind a closed tavern, his physical appearance and his inability to properly maintain his balance while walking to the donut shop. The cumulative effect of these observations led the officer reasonably to conclude that the defendant was operating under the influence.

## II.

■■■ The fact that the officer followed the defendant's vehicle for approximately

two or three miles does not taint the officer's reasonable and articulable suspicion by infringing on Hatch's fourth amendment rights. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. Police observation of an individual's activity can constitute an unreasonable search under the fourth amendment if the individual has a reasonable expectation of privacy in the activity observed by the police officer. *State v. Pelletier,* 541 A.2d 1296, 1297 (Me.1988). An expectation of privacy in an activity is reasonable if the individual subjectively has an expectation of privacy in that activity and if society is willing to recognize the individual's expectation of privacy in the activity as objectively reasonable. *Id.* (citing *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

■ However, an expectation of privacy concerning one's method of driving on a public road is not reasonable. *Pelletier,* 541 A.2d at 1297. "A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United States v. Knotts,* 460 U.S. 276, 281, 103 S.Ct. 1081, 1085, 75 L.Ed.2d 55 (1983). Officer Potter's pursuit of the defendant and his observations of the defendant's conduct during that brief period of time did not constitute a violation of the defendant's fourth amendment rights.

## III.

■ Finally, contrary to Hatch's contention, the officer's crossing of jurisdictional boundaries from Bangor into Brewer does not trigger the application of the exclusionary rule and require the suppression of any evidence obtained. Hatch's argument is based upon 30–A M.R.S.A. § 2671(2) (Supp. 1992) that provides, in pertinent part, that

"No police officer has any authority in criminal or traffic infraction matters beyond the limits in which the officer is appointed." Since Officer Potter followed Hatch into Brewer and, therefore, arguably beyond his appointed jurisdiction, Hatch contends that the officer violated § 2671(2) and any observations should be suppressed on that ground.

The testimony of Officer Potter at the suppression hearing revealed that although he is a member of the Bangor Police Department, he was also sworn in as a Brewer officer. Officer Potter testified that he is a "special police officer" with "the rights and authority to proceed into Brewer and make any arrests associated with being in that jurisdiction." The record fails to indicate what a "special police officer" is and no findings on that issue were made by the District Court.[1]

In *State v. Harding,* 508 A.2d 471, 472–73 (Me.1986), we concluded that a municipal law enforcement officer was not prohibited from going to the home of a driver suspected of leaving the scene of an accident even though the suspect's home was located outside the limits of the officer's municipality. In *Harding,* the vehicles driven by the defendant and by another individual, Cloutier, were involved in an automobile accident. Cloutier reported the incident to a Livermore Falls police officer and informed the officer that he thought the other driver may have been intoxicated. *Id.* at 472. The officer proceeded to the defendant's home which was located in another town and county. After speaking with the defendant, the officer concluded that he was intoxicated and arrested him for operating under the influence. Despite the fact that the officer was not in "fresh pursuit" as defined by the statute then in effect,[2] we concluded that the extra-territorial arrest was not unlawful. *Id.* The fact that the defendant was arrested for a crime different from that which prompted the investigation was of no moment. *Id.* at

---

1. The District Court noted that "The record is void (sic) as to exactly what a "Special Police" officer is. It appears to be some manner of cross-deputization between the Bangor and Brewer Police Departments."

2. 30 M.R.S.A. § 2364 (1978) was repealed in 1987.

473. The officer's authority is to be measured at the moment of arrest and by the nature of the offense for which the arrest was effected regardless of the nature of the offense which precipitated the investigation. *Id.* Furthermore, we noted

> Even if we consider [the officer's] approach to [the defendant] as a "stop," such an investigatory stop was easily justified in these circumstances. *See State v. Cyr,* 501 A.2d 1303 (Me.1985). After [the officer] approached [the defendant] and observed his condition, [the officer] had ample probable cause to believe the offense of operating under the influence had occurred in Livermore Falls.

*Id.* at 472–73.

Similarly, in the present case, the officer left Bangor to investigate what he believed to be suspicious activity. In fact, unlike the situation in *Harding,* Officer Potter personally observed the defendant's activities in his appointed jurisdiction, Bangor. While in Brewer, Officer Potter then observed further conduct which justified a stop of the defendant. These observations gave rise to a reasonable suspicion that the defendant was operating under the influence in Bangor. The fact that the most incriminating observations took place in Brewer, instead of Bangor, is not relevant to the issues before us.

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with the opinion herein.

All concurring.