STATE of Maine

v.

Peter PIKE.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 1, 1993.

Decided May 16, 1994.

R. Christopher Almy, Dist. Atty., Jeffrey Silverstein, Asst. Dist. Atty., Dover–Foxcroft, for state.

Joseph M. Baldacci, Bangor, for defendant.

Before WATHEN, C.J., GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ. and COLLINS, A.R.J.*

COLLINS, Active Retired Justice.

Peter Pike appeals from the judgment entered in the Superior Court (Piscataquis County, *Kravchuk, J.*) on his conditional guilty plea of violation of the operating under the influence of intoxicating liquor and habitual offender statutes. 29 M.R.S.A. §§ 1312–B, 2298 (Pamph.1993). This conditional guilty plea was entered after the court denied Pike's motion to suppress. He asserts that the actions of Milo Reserve Police Officer Robert Kinney, who detained Pike and searched Pike's car for keys while beyond the Milo town line, were unauthorized by 30–

---

* Justice Collins participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity of Active Retired Justice.

A M.R.S.A. § 2671(2) (Supp.1992).[1] Pike claims the Officer lacked probable cause for detention and search, and the resulting evidence obtained should have been suppressed. Finally, Pike claims that the Officer lacked probable cause for the detention and search. Finding no error in the denial of the motion to suppress, we affirm the judgment entered by the trial court.

On October 25, 1991, the Officer was driving into the Town of Milo from the Town of Orneville. While in Milo, the Officer passed a car, going in the opposite direction, which he believed he had stopped earlier for a loud exhaust. The Officer turned his cruiser around, so that he was traveling in the direction of Orneville, and followed the vehicle for approximately ¼ to ½ mile. After realizing that the car was not the one which had been stopped earlier, and after observing nothing suspicious concerning the operation of the vehicle, the Officer pulled his cruiser to the right shoulder of the road in order to reverse his direction. At this point, the Officer's cruiser was approximately 80 feet over the Milo town line in Orneville. The Officer had no intention of stopping the car and had neither activated the cruiser's emergency lighting nor its siren.

The car the Officer was following likewise pulled over to the right shoulder of the road, stopped, and shut off its lights and engine. The Officer saw no one get out of the vehicle. After a moment, the Officer drove his cruiser up behind the auto and initiated the cruiser's emergency lighting. The Officer wanted to see if there was a problem with the driver, or if the auto had broken down.

The Officer walked towards the car and observed a person's head in the middle of the front seat leaning towards the passenger side. The Officer hollered for the occupant, who was Pike, to roll down the driver's side window. After getting no response, he went to the passenger side of the vehicle. The window on this side was already rolled down. The Officer asked Pike if he would get out of the vehicle, and as he spoke with Pike he could smell alcohol on Pike's breath, could see that Pike's eyes were bloodshot and noticed that Pike's speech was slurred.

On request, Pike failed to produce a drivers license or a registration, but did produce a Maine State I.D. Pike also told the Officer that he had not been driving, but rather, a friend was driving who had run into the woods. The Officer looked into the vehicle, saw no keys, and asked Pike where they were. Pike responded that he did not know. The Officer told Pike to stay still while he proceeded to go to his cruiser. At no time did the Officer indicate to Pike that he was under arrest.

Back at the cruiser, the Officer contacted the Piscataquis Sheriff's Office to request a sheriff, with jurisdiction in Orneville, to administer a sobriety test. The Officer also requested that the Sheriff's office run a license check on Pike. After a couple of minutes, the license check revealed that Pike's license was under suspension and that he was an habitual offender. The Officer went back and spoke to Pike. The car door was open and the Officer looked in the car for the keys and found them underneath the front seat. The Officer inserted the keys into the ignition and then confronted Pike, who had no explanation. An investigator from the Piscataquis County Sheriff's Office arrived within 15 minutes from the time the Officer asked Pike to step out of his car. The investigator administered field sobriety tests on Pike and arrested him on charges of an habitual offender and operating under the influence of intoxicating liquor ("OUI").

After a hearing, the trial court denied Pike's motion to suppress the statements,

---

1. 30-A M.R.S.A. § 2671(2) (Supp.1992) states, in pertinent part:
    No police officer has any authority in criminal or traffic infraction matters beyond the limits of the municipality in which the officer is appointed, except to:

    . . . . .

    E. Arrest a person who travels beyond the limits of the municipality in which the officer is appointed when in fresh pursuit of that person. . . .

test results, and physical objects obtained from him. Pike then entered a conditional guilty plea pursuant to M.R.Crim.P. 11(a)(2) and filed a timely appeal from his convictions.

### Exclusionary Rule

■ "The trial court's decision to suppress the evidence is reviewed only for clear error." *State v. Hatch*, 614 A.2d 1299, 1301 (Me.1992) (citations omitted); *see also* Cluchey & Seitzinger, 2 *Maine Criminal Practice* § 41A.8 at VIII–70 (1992). Assuming, without deciding, that the Officer violated ·30–A M.R.S.A. § 2671(2), we find no clear error in the decision of the trial court not to suppress the evidence obtained. Recently, we have held "that evidence obtained from an extraterritorial arrest based on probable cause should not *per se* be excluded." *State v. Jolin*, 639 A.2d 1062, 1064 (Me.1994). In this case, as in *Jolin*, the Officer acted reasonably and did not intentionally disregard the territorial limits to which he was subject in order to ferret out crime. Additionally, as discussed below, the Officer had probable cause to detain Pike and search his car. Given the facts of this case, we find that an exclusionary rule does not apply. However, we do not decide the point at which a violation of the fresh pursuit statute might trigger an exclusionary rule.

### Probable Cause for Detention and Search

Pike argues that the Officer did not have probable cause to detain him or search his car. He claims that the smell of alcohol and his general appearance does not provide the necessary probable cause. On appeal, we "will not reverse the court's findings concerning whether probable cause exists unless it is clearly erroneous." *State v. Bento*, 600 A.2d 1094, 1097 (Me.1991) (citation omitted). The trial court found that probable cause existed to justify the search and detention.

■ Regardless of whether the Officer was authorized, when the Officer detained Pike he adopted the role of a police officer and the guarantees of the Fourth Amendment were implicated. *State v. LeGassey*, 456 A.2d 366, 367 (Me.1983).

In order to justify a brief detention short of a formal arrest, a law enforcement officer must act on the basis of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." The intrusion is justified if the officer has suspicion of "criminal conduct which has taken place, is occurring, or imminently will occur" and the suspicion is reasonably warranted. The level of information held by the officer need not, however, rise to that of probable cause required for an arrest. "In fact, the observed conduct giving rise to the officer's suspicion of criminal activity may be wholly lawful in itself."

*Hatch*, 614 A.2d at 1301 (citations omitted).

■ In this case, the Officer observed Pike stopping on the shoulder of the road. Pike smelled of alcohol, spoke with slurred speech, and had bloodshot eyes. Additionally, the Officer was told by Pike that someone else had driven the car but the Officer did not see anyone get out of the vehicle.[2] Based on the facts of this case, the trial court's finding that the Officer had articulable suspicion to believe that criminal activity had occurred, thus justifying the detention, is not clearly erroneous.

■ Even if this detention was not "brief" and would constitute a "seizure of the person," the detention nevertheless was justified. We have previously stated that a detention of a motorist by a police officer, who is investigating a car stopped at the side of the road, is "a governmental seizure of the person, subject to the exclusionary rule unless shown to be reasonable." *LeGassey*, 456 A.2d at 367. A finding of "reasonableness" is also subject to the "clearly erroneous" standard of review. *See State v. Izzo*, 623 A.2d 1277, 1281 (Me.1993). This "reasonableness" standard is satisfied if the police show that probable cause existed to warrant the detention. *See LeGassey*, 456 A.2d at 367 n. 4. On the facts of this case, the trial court's finding of "probable cause" to justify the detention was not clearly erroneous.

---

**2.** Additionally, the hearing transcript indicates that the officer noticed alcohol in the passenger side of the auto. However, the trial court's opinion does not refer to this fact.

 Regarding the search of Pike's car for the keys, *State v. Mehuren,* 594 A.2d 1073, 1075 (Me.1991) states:

> An officer may conduct a warrantless search of a vehicle or a container "when the officers' personal knowledge of facts and circumstances in combination with any reasonably trustworthy information conveyed to them would warrant a prudent person to believe that the [vehicle or] container seized holds either contraband or evidence of a crime." The record discloses that when first approaching [defendant's] vehicle the officer immediately observed signs that [defendant] was intoxicated and that the vehicle contained alcoholic beverages. Having established probable cause to believe that [defendant] was driving under the influence of intoxicating liquor, the officer was justified in asking [defendant] and his passenger to step out of the vehicle in order to facilitate the officer's search of the vehicle for evidence of that crime.

(citations omitted); *see also Izzo,* 623 A.2d at 1281–82; *Bento,* 600 A.2d at 1096–97. On the facts of this case, the trial court's finding that the necessary probable cause existed to justify the brief search was not clearly erroneous.

The entry is:

Judgment affirmed.