2000 ME 194

**STATE of Maine**

v.

**Robert RIDEOUT.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 27, 2000.

Decided Nov. 3, 2000.

Neale T. Adams, District Attorney, John M. Pluto, Deputy Dist. Atty., Carrie Linthicum, Asst. Dist. Atty., Caribou, for State.

James M. Dunleavey, Dunleavey Law Offices, P.A., Presque Isle, for Robert Rideout.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Robert Rideout appeals from the judgment of conviction entered in the Superior Court (Aroostook County, *Pierson, J.*) on his conditional plea of guilty to the offense of operating a motor vehicle while his license was revoked as an habitual offender (Class C), 29–A M.R.S.A. § 2557 (Supp.1999).[1] Rideout contends that the

---

1. 29–A M.R.S.A. § 2557 provides in relevant part:

    **1. Crime.** A person commits a crime as defined in subsection 2 if that person operates a motor vehicle on a public way, as defined in Title 17–A, section 505, subsection 2, when that person's license to operate a motor vehicle has been revoked under this subchapter or former Title 29, chapter 18–A and that person:

Superior Court erred by denying his pretrial motion to suppress statements and the out of court identification because the officer made the stop in violation of the fresh pursuit statute, 30–A M.R.S.A. § 2671(2) (1996).[2] Rideout contends that the officer did not have probable cause, and in light of the circumstances, an extraterritorial stop was unreasonable. We affirm the judgment.

## I.  FACTS AND PROCEDURE

[¶ 2] Joseph Bubar, Chief of the Fort Fairfield Police Department, was acquainted with Rideout, a resident of Fort Fairfield, because he had arrested him on two previous occasions. On September 9, 1999, Chief Bubar was in uniform and driving a marked Fort Fairfield police cruiser from Fort Fairfield to attend court in Presque Isle. As he was traveling in Presque Isle, Chief Bubar came upon a vehicle driven by a person he believed to be Rideout. The Chief believed that Rideout's license was under suspension.[3] He followed the vehicle for approximately three miles and observed that the driver was tall and had long hair. Other than the Chief's belief that Rideout was driving with a suspended license, he had no reason to stop the vehicle.

> **A.**  Has received written notice of the revocation from the Secretary of State;
> **B.**  Has been orally informed of the revocation by a law enforcement officer;
> **C.**  Has actual knowledge of the revocation; or
> **D.**  Is a person to whom written notice was sent in accordance with section 2482 or former Title 29, section 2241, subsection 4.
>   **2.  Offense; penalty.**  Violation of this section is:
>   . . . .
>   **B.**  A class C crime if:
>   **(1)** The person has one or more convictions for operating after revocation under this section or under former Title 29, section 2298 within the previous 10 years; or
>   **(2)** The person has one or more convictions for violating section 2411 or former Title 29, section 1312–B within the previous 10 years.

[¶ 3] Chief Bubar radioed the Presque Isle Police Department and was told that Rideout's license was, indeed, under suspension. The Chief requested that a unit from Presque Isle be dispatched to stop Rideout. The Presque Isle dispatcher responded that all of the Presque Isle units were busy and requested that the Chief make the stop. Chief Bubar stopped the vehicle and confirmed that it was Rideout operating the vehicle. A Presque Isle officer arrived after the Chief had requested Rideout's license, and Chief Bubar left.

[¶ 4] After being indicted by the grand jury on one count of operating after habitual offender revocation, Rideout pleaded not guilty and filed a motion to suppress his statements and the out of court eyewitness identification. Chief Bubar testified at the suppression hearing, and the court denied the motion to suppress. The Superior Court found that the Chief had probable cause to stop Rideout's vehicle, and the extraterritorial stop was reasonable. Pursuant to M.R.Crim. P. 11(a)(2), Rideout entered a conditional plea of guilty.[4]

## II.  SUPERIOR COURT'S FINDING OF PROBABLE CAUSE

[¶ 5] At the end of the suppression hearing, the Superior Court found that Chief

---

**2.**  30–A M.R.S.A. § 2671(2) provides in pertinent part:

> No police officer has any authority in criminal or traffic infraction matters beyond the limits of the municipality in which the officer is appointed, except to:
>   . . . .
>   **E.**  Arrest a person who travels beyond the limits of the municipality in which the officer is appointed when in fresh pursuit of that person. This paragraph applies to all crimes and traffic infractions.

**3.**  Chief Bubar believed Rideout was operating under a suspension (Class E) pursuant to 29–A M.R.S.A. § 2412–A (1996 & Supp.1999); however, Rideout was prosecuted for violating 29–A M.R.S.A. § 2557, operating after habitual offender revocation (Class C). The appeal is not affected by the distinctions between the offenses.

**4.**  Rideout was sentenced to thirty days confinement.

Bubar had probable cause to stop Rideout's vehicle. Rideout contends that Chief Bubar did not have probable cause to stop the vehicle.

■ [¶ 6] The Superior Court's finding of probable cause subsumes a finding of a reasonable and articulable suspicion. *See State v. Babcock*, 361 A.2d 911, 914 (Me.1976) (inferring that probable cause is a more difficult standard to establish than a reasonable and articulable suspicion standard). The Constitution requires only the presence of a reasonable and articulable suspicion to make an investigatory stop of a vehicle, so we need not determine whether Chief Bubar also had probable cause to make the stop. *Id.; State v. Dulac*, 600 A.2d 1121, 1122 (Me.1992) (finding that "[t]he Fourth Amendment to the United States Constitution and Article I, section 5 of our Maine Constitution require that in order to make a valid investigatory stop, a law enforcement officer must act on the basis of specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion") (citations and internal quotations omitted). We do not need to review the finding of a reasonable and articulable suspicion, however, because Rideout concedes that Chief Bubar had a reasonable and articulable suspi-

cion to make the stop. *See State v. Huether*, 2000 ME 59, 748 A.2d 993.

## III.  VIOLATION OF FRESH PURSUIT STATUTE

■ [¶ 7] Chief Bubar stopped Rideout in a municipality in which Chief Bubar was not appointed as a law enforcement officer; therefore, the stop violated the fresh pursuit statute, 30–A M.R.S.A. § 2671. Rideout contends that the statutory violation warrants the application of the exclusionary rule because of the absence of the requisite probable cause and reasonableness to justify a violation of the fresh pursuit statute.

■ [¶ 8] The Superior Court's decision not to suppress the evidence is reviewed only for clear error. *State v. Pike*, 642 A.2d 145, 147 (Me.1994). We have declined to adopt a *per se* rule to exclude evidence that is obtained in violation of the fresh pursuit statute. *See State v. Jolin*, 639 A.2d 1062, 1064 (Me.1994). In both *Jolin*,[5] and *Pike*,[6] we found that the exclusionary rule did not apply after the officer violated the hot pursuit statute. *Jolin*, 639 A.2d at 1064; *Pike*, 642 A.2d at 147. In *Jolin*, the exclusionary rule did not apply because the "officer had probable cause to arrest defendant and her [the officer's] action was reasonable in light of the immediate need to prevent defendant from

---

5. In *Jolin*, the officer was on duty for the city of Brewer but was having a coffee break in Bangor. *Jolin*, 639 A.2d at 1063. While driving in Bangor, she observed a vehicle without its headlights on swerve into a snowbank, cross over the lane, and then drift back into the snowbank. *Id.* The officer followed the vehicle, and then proceeded to stop the vehicle and arrest the defendant for operating under the influence. *Id.*

6. In *Pike*, a Milo officer was following a vehicle that he believed he had previously stopped for a loud exhaust. *Pike*, 642 A.2d at 146. After the officer had driven approximately 80 feet over the town line of Orneville, the officer realized that it was a different vehicle. *Id.* The officer pulled onto the side of the road to reverse his direction. *See id.* At that point, the vehicle the officer had been following also pulled onto the side of road. *See id.* The

officer decided to see if the driver needed assistance, so the officer put on the cruiser lights and pulled up behind the vehicle. *Id.* The officer asked the driver to exit the vehicle, and the officer noticed that the driver had bloodshot eyes, slurred speech and smelled of alcohol. *Id.* The officer had a conversation with the driver and asked the driver to stay at the vehicle while the officer went to his cruiser. *Id.* The officer radioed for a sheriff with jurisdiction in Orneville to come to the scene to administer a sobriety test. *Id.* The officer also requested a license check on the driver and was informed that the driver was an habitual offender with a suspended license. *Id.* An investigator with proper jurisdiction arrived shortly and arrested the driver for operating under the influence and for violating the habitual offender statute. *Id.*

harming himself or others." *Jolin*, 639 A.2d at 1064. Similarly in *Pike*, we found that the officer had probable cause to detain the defendant, and the officer "acted reasonably and did not intentionally disregard the territorial.limits to which he was subject in order to ferret out crime." *Pike*, 642 A.2d at 147. We hold that a reasonable and articulable suspicion satisfies the probable cause component of the *Jolin* and *Pike* test.

[¶ 9] Chief Bubar did not leave Fort Fairfield to make an excursion into Presque Isle to ferret out crime. He was traveling in a different jurisdiction for a reason unrelated to the stop and was on duty while making the stop. Once in Presque Isle, after observing a vehicle he believed to be driven by Rideout, he requested that an officer in the correct jurisdiction make the stop, and he only made the stop when he was instructed to do so by the dispatcher. These facts indicate that Chief Bubar acted reasonably and did not intentionally disregard his territorial limits in an attempt to ferret out crime.

The entry is:

Judgment affirmed.

