2003 ME 69

**STATE of Maine**

v.

**Mark O. MENARD**

Supreme Judicial Court of Maine.

Submitted on briefs: March 24, 2003.
Decided: May 8, 2003.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Attorney General, Patricia A. Mador, Asst. District Attorney, Augusta, for State.

Theodore K. Hoch, Esq., Bath, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Pursuant to 15 M.R.S.A. § 2115–A (2003) and M.R.App. P. 21, the State appeals from an order entered in the District Court (W. Bath, *Perry, A.R.J.*) granting the motion of Mark Menard to suppress evidence in the operating under the influence case brought against him. The State contends that the court incorrectly concluded that a Brunswick police officer violated the fresh pursuit statute when he stopped Menard's vehicle in Topsham. We agree with the State's contention that the officer had a reasonable articulable suspicion that Menard had been operating under the influence in Brunswick, which justified the stop in Topsham, and accordingly, we vacate the suppression order.

[¶ 2] On April 17, 2002, at approximately 1:00 A.M., Sergeant Mark LaFountain, from the Brunswick Police Department, was parked in a driveway on Federal Street in Brunswick. He saw a Ford pickup truck come to a stop at the stop sign on Center Street, and the truck remained stopped for approximately twenty to thirty seconds. Because there was no traffic on Federal Street at the time, the officer believed that the stop was for an inordinate amount of time. The operator of the vehicle then proceeded to turn left onto Federal Street. The officer observed the vehicle turn left with a very wide radius and then continue turning so that half of the vehicle went into the oncoming lane for a few seconds. The vehicle continued on Federal Street and then stopped at a stop sign before turning right onto Mason Street. The officer decided to follow the truck. Although the officer lost sight of the vehicle for a brief period of time, he caught up to the vehicle about halfway across the Merrymeeting Bridge, which is the dividing line between the towns of Brunswick and Topsham. It was then that he clocked the speed of the vehicle at 55 to 60 M.P.H. in a 45 M.P.H. zone.

[¶ 3] The officer continued to follow the vehicle in Topsham and noted that the truck was drifting in its lane, first with its right tires on the dividing lane, and then overcorrecting so that the left tires were on the yellow divider line. As the truck approached a traffic light, the officer saw the truck brake quickly, causing the nose of the truck to drop. After the traffic light, the two lanes turned into one. The officer observed the truck go over the fog line and then overcorrect and cross the center line. The officer called his dis-

patcher in Brunswick and requested a call to the Topsham Police Department because he believed the driver of the vehicle was operating under the influence. The officer determined, however, that the operation was so bad and the traffic in the area so heavy that, if he waited for the Topsham police, there could be an accident. Therefore, the officer engaged his blue lights and pulled the truck over. The defendant, Mark Menard, was driving the truck.

[¶ 4] The officer approached Menard and asked him for his license, registration, and proof of insurance. Within five minutes of being notified, the Topsham police arrived at the scene of the stop. The Brunswick officer reported his observations to the responding Topsham officers and then left the scene. Menard was arrested for operating under the influence by a Topsham police officer, and later charged with a violation of 29–A M.R.S.A. § 2411(1) (1996) (Class D).

[¶ 5] Menard filed a motion to suppress all evidence obtained by Sgt. LaFountain. Following a testimonial hearing, the court granted the motion to suppress. In particular, the court found that the officer did not have a reasonable articulable suspicion of a violation in his own jurisdiction and that the stop violated the fresh pursuit statute. The court's order suppresses all evidence obtained after Sgt. LaFountain reacquired sight of Menard's vehicle on the bridge between Brunswick and Topsham.

[¶ 6] The State filed a motion for reconsideration of the suppression order, and for conclusions of law. The District Court adopted Menard's recommended conclusions of law and denied the State's motion for reconsideration, and this appeal by the State followed. *See* M.R.App. P. 21.

[¶ 7] In ruling on a motion to suppress, the motion court addresses the issue in two separate steps. *State v. Sylvain,* 2003 ME 5, ¶ 8, 814 A.2d 984, 986. The motion court first determines the historical facts. *Id.* ¶ 8, 814 A.2d at 986–87. The court then draws the legal conclusions from the historical facts. *Id.* ¶ 9, 814 A.2d at 987. We recently held that "a motion court's findings of historical fact will be overturned only when clearly erroneous; however, the legal conclusions drawn from the historical facts are subject to an independent examination." *Id.* ¶ 10. The State in this case has not challenged the historical facts found by the motion court, only the legal conclusions derived from those facts. We examine those conclusions *de novo. See id.*

[¶ 8] The State contends that the observations of the Brunswick police officer, both while Menard was in Brunswick and after Menard crossed into Topsham, provided the officer with a reasonable articulable suspicion that Menard was operating under the influence in Brunswick, which justified the stop in Topsham only moments later. In addition, the State argues that there was no violation of the fresh pursuit statute when Menard was stopped in Topsham. Menard contends that the suppression order should be upheld because the Brunswick officer did not have a reasonable articulable suspicion to make the stop in Brunswick and violated the fresh pursuit statute by following Menard's vehicle and making the stop in Topsham.

[¶ 9] The Constitutions of the United States and Maine require only the presence of a reasonable and articulable suspicion in order for an officer to make a valid investigatory stop of a vehicle. *State v. Rideout,* 2000 ME 194, ¶ 6, 761 A.2d 288, 290. Reasonable and articulable suspicion is an easier standard to meet than probable cause. *Id.* We have previously con-

cluded that speeding is an articulable fact that warrants an investigatory stop, *State v. Bolduc*, 1998 ME 255, ¶ 6, 722 A.2d 44, 45, as is an unusual turn, *see State v. Dulac*, 600 A.2d 1121, 1123 (Me.1992) (finding that it was objectively reasonable for the trooper to suspect that the defendant was operating under the influence when the trooper saw the defendant make a very wide turn that caused part of the vehicle to leave the paved surface of the road).

[¶ 10] The fresh pursuit statute provides that a police officer does not have any authority in criminal matters beyond the limits of the municipality that the officer works for except to arrest a person who travels beyond the officer's municipality when the officer is in fresh pursuit of that person.[1] 30–A M.R.S.A. § 2671(2) (1996). The statute defines "fresh pursuit" as "instant pursuit of a person with intent to apprehend" with regards to Class D or Class E crimes. 30–A M.R.S.A. § 2671(2)(E)(2). Operating under the influence is a Class D offense. 29–A M.R.S.A. § 2411(1).

[¶ 11] In *State v. Hatch*, 614 A.2d 1299, 1301 (Me.1992), a Bangor police officer followed a car from Bangor into Brewer and subsequently arrested the driver, Hatch, for operating under the influence. We held that, contrary to Hatch's contention based on the fresh pursuit statute, "the officer's crossing of jurisdictional boundaries from Bangor into Brewer does not trigger the application of the exclusionary rule and require the suppression of any evidence obtained." *Id.* at 1302. We reiterated our earlier holding in *State v. Harding*, 508 A.2d 471, 473 (Me.1986), that an officer's authority is measured at the moment of the arrest and by the nature of the offense that the defendant is arrested for regardless of the nature of the offense that caused the investigation to begin.[2] *Hatch*, 614 A.2d at 1303. In *Hatch*, we concluded as follows:

> [T]he officer left Bangor to investigate what he believed to be suspicious activity. In fact, unlike the situation in *Harding*, [the officer] personally observed the defendant's activities in his appointed jurisdiction, Bangor. While in Brew-

---

1. Title 30–A M.R.S.A. § 2671(2) (1996) provides in pertinent part as follows:

    **2. Powers** . . . . No police officer has any authority in criminal or traffic infraction matters beyond the limits of the municipality in which the officer is appointed, except to:

    . . . .

    E. Arrest a person who travels beyond the limits of the municipality in which the officer is appointed when in fresh pursuit of that person. This paragraph applies to all crimes and traffic infractions. As used in this paragraph:

    . . . .

    (2) With respect to Class D and Class E crimes and traffic infractions, "fresh pursuit" means instant pursuit of a person with intent to apprehend . . . .
    *Id.*

2. In *Harding*, a Livermore Falls police officer received information that a driver involved in a hit and run accident in Livermore Falls

resided at a certain residence in Jay so the officer went to the residence. 508 A.2d 471, 471–72 (Me.1986). When he reached the Jay residence and spoke with the driver of the van, he concluded that the driver was intoxicated and arrested him for operating under the influence. *Id.* at 472. We were unpersuaded by Harding's contention that the evidence resulting from his arrest should be suppressed because the pursuit and stop were unlawful under the fresh pursuit statute existing at that time. *Id.* Relying on *State v. Carey*, 412 A.2d 1218, 1220–22 (Me.1980), we concluded that the officer *"at the moment of arrest"* had pursued the defendant without unreasonable delay, and that an officer's authority should be measured at the moment of arrest and by the nature of the offense that the officer began to investigate. *Harding*, 508 A.2d at 473.

er, [the officer] then observed further conduct which justified the stop of the defendant. *These observations gave rise to a reasonable suspicion that the defendant was operating under the influence in Bangor. The fact that the most incriminating observations took place in Brewer, instead of Bangor, is not relevant to the issues before us.*

*Id.* (emphasis added).

[¶ 12] The Brunswick officer witnessed Menard, while in Brunswick, make an unusually prolonged stop followed by a questionable turn. The officer decided to follow Menard's vehicle, caught up to the vehicle at the dividing line between Brunswick and Topsham, and observed that its speed was 10–15 M.P.H. over the speed limit. The officer continued to follow the vehicle and noted that it drifted in and out of its lane, overcorrected twice, and braked quickly. Accordingly, contrary to the conclusions of the motion court that the State did not prove that the officer had a reasonable articulable suspicion of operating under the influence in Brunswick and that there was no fresh pursuit, the pursuing officer was justified in stopping the defendant in Topsham for suspicion of operating under the influence in Brunswick after observing suspicious operation in both municipalities, even though the most incriminating observations were made in Topsham. *See Hatch,* 614 A.2d at 1303. Moreover, the stop was fully justified by the immediate danger created by Menard's erratic driving in Topsham that created a serious risk of accident. *See State v. Jolin,* 639 A.2d 1062, 1064 (Me.1994) (finding police officer's extraterritorial arrest of defendant for operating under the influence reasonable "in light of the immediate need to prevent defendant from harming himself or others").

The entry is:

Order of suppression vacated. Remanded to the District Court for further proceedings consistent with this opinion.