MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:     2017 ME 185
Docket:       Ken-16-402
Argued:       April 13, 2017
Decided:      August 22, 2017
Revised:      December 7, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

RYAN TURNER

SAUFLEY, C.J.

[¶1]  Ryan Turner drove his car up over a sidewalk median in Waterville and drew the attention of a Winslow police officer who had just stopped another driver, coming across the bridge into Waterville, for a traffic infraction that had occurred in Winslow.  After Turner careened onward, he pulled into a parking lot and stopped his car.  The Winslow officer stopped what he was doing, followed Turner, and approached Turner in the parking lot.  Following that contact, Turner was charged by an arriving Waterville officer with operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(C)(1) (2016).  After a jury found Turner guilty, the court (Kennebec County, *Benson, J.*) entered a judgment of conviction.  Turner appeals from the conviction, arguing that the motion court (*Marden, J.*) erred

in denying his motion to suppress the evidence obtained from the Winslow officer's extraterritorial stop of his vehicle because the officer exceeded the authority granted to him by 30-A M.R.S. § 2671 (2016) and Winslow, Me., Code § 2-44 (2010). We affirm the judgment of conviction.

## I. BACKGROUND

[¶2] The following facts were found by the motion court and are supported by competent evidence in the suppression record. *See State v. Kierstead*, 2015 ME 45, ¶ 14, 114 A.3d 984.

[¶3] On March 19, 2015, at approximately 10:00 p.m., a Winslow law enforcement officer initiated a traffic stop in Winslow, but the car drove into Waterville before stopping. While engaged in that traffic stop in Waterville, the officer heard a loud noise and observed a silver four-door sedan drive over the curb and proceed in an erratic manner while turning from Spring Street onto Front Street. The officer terminated the traffic stop and attempted to locate the silver sedan on Front Street. He noticed a vehicle of identical appearance parked in an adjacent bank parking lot. The officer pulled his cruiser in behind the vehicle, leaving sufficient room for the vehicle to pull around the cruiser, and turned on the cruiser's blue lights. He noticed that the motor was not running and that there was damage to the vehicle and fluid on

3

the ground consistent with what one would observe after a vehicle had been driven over a curb.  The officer also made observations of the driver, whose appearance indicated impairment.  The officer asked for the driver's license and registration and identified the driver as Turner.  The officer took no further action and immediately notified Waterville police.[1]  The record reflects that a Waterville officer arrived approximately two minutes later.

[¶4]  Turner was charged by complaint with criminal operating under the influence and failing to submit to a chemical test (Class D), 29-A M.R.S. § 2411(1-A)(C)(1).  He entered a not guilty plea and moved to suppress all evidence obtained from the Winslow officer's stop of the vehicle, arguing that he was unreasonably seized by the Winslow police officer because the officer was acting outside the municipality where he had been appointed, in violation of Maine's "fresh pursuit" statute, 30-A M.R.S. § 2671, and the Winslow Code.

[¶5]  On April 26, 2016, the court held a suppression hearing where the Winslow officer was the only testifying witness.  After the hearing, the court entered an order denying the motion to suppress.  Turner filed two motions for further findings of fact and conclusions of law and a motion to reconsider.

---

[1]  The Winslow officer testified that he did not communicate directly with Waterville police but rather contacted "the Waterville communication center," which dispatches for both Winslow police and Waterville police.

The court ultimately concluded that the officer's observations of the erratic operation and possible property damage constituted specific and articulable facts for the officer to reasonably believe that a misdemeanor had been committed in his presence or that the driver was impaired and needed assistance. *See* M.R.U. Crim. P. 41A(d). The court further concluded that Turner was not seized until the Winslow officer asked for Turner's license and registration, at which time the encounter became an investigatory detention. The court declined to give weight to Turner's argument that the Winslow officer did not have jurisdictional authority to seize him in Waterville. Citing to *State v. Rideout*, 2000 ME 194, 761 A.2d 288, and *State v. Jolin*, 639 A.2d 1062 (Me. 1994), the court concluded, "The officer had probable cause to arrest [Turner] and his action was reasonable in light of an immediate need to prevent [Turner] from harming himself or others. An extraterritorial arrest is not per se unreasonable giving rise to the application of the exclusionary rule." The court declined to make further findings regarding the Winslow officer's contact with the Waterville Police Department.

[¶6]  Following the denial of the motion to suppress, the court (*Benson, J.*) held a one-day jury trial on August 22, 2016. The jury found

5

Turner guilty, and the court sentenced him to the mandatory ninety-six hours' imprisonment required by his refusal to submit to a chemical test, a 150-day license suspension, and a $600 fine. *See* 29-A M.R.S. § 2411(5)(A) (2016). Turner timely appealed. *See* 15 M.R.S. § 2115 (2016); M.R. App. P. 2(b)(2)(A).

## II.  DISCUSSION

[¶7]  Turner argues that the trial court erred in denying his motion to suppress because he was unreasonably seized when the Winslow officer, outside that officer's territorial jurisdiction, stopped him in violation of Maine's fresh pursuit statute and the local ordinance. When reviewing a trial court's denial of a motion to suppress, we review the findings of fact for clear error and the conclusions of law de novo. *State v. Gerry*, 2016 ME 163, ¶ 11, 150 A.3d 810. Because Turner does not challenge the court's factual findings, we review only the legal determination that the officer's seizure of Turner was constitutional and reasonable. *See Kierstead*, 2015 ME 45, ¶ 14, 114 A.3d 984. "We will uphold the denial of a motion to suppress if any reasonable view of the evidence supports the trial court's decision." *Id.* (quotation marks omitted).

A.    Fourth Amendment Seizure

[¶8]   The State contests the court's finding that the Winslow officer subjected Turner to an investigatory detention. It argues that, without investigatory detention, Turner's Fourth Amendment rights were not implicated.[2]  Although Turner asserts that the State cannot contest this finding because it did not cross-appeal, when the defendant appeals, the State is not required to cross-appeal and "may argue that error in the proceedings at trial in fact supports the judgment."  15 M.R.S. § 2115-A(3).  Ultimately, we defer to the motion court's factual findings and final conclusion that the Winslow officer effected a brief, investigatory detention of Turner for which Turner was entitled to the protections of the Fourth Amendment.[3]

[¶9]   Therefore, we must determine whether the officer's actions constituted an unreasonable seizure.  *See State v. Gulick*, 2000 ME 170, ¶¶ 12-13, 759 A.2d 1085.  As always, this is a mixed question of fact and law.

---

[2]  In its original order on Turner's motion to suppress, the court concluded that the officer did not seize Turner for Fourth Amendment purposes.  The court stated that it "[was] not satisfied that the mere operation of the officer's blue light determines a traffic stop or detention of the operator." After Turner filed a joint motion for further findings of fact and conclusions of law and motion for reconsideration, the court withdrew its prior finding and found that Turner was seized when the officer requested Turner's license and registration, but not before.

[3]  To support an investigatory detention of a motor vehicle, a law enforcement officer "must have an objectively reasonable, articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety has occurred, is occurring, or is about to occur."  *State v. Sylvain*, 2003 ME 5, ¶ 11, 814 A.2d 984.

*See Gerry*, 2016 ME 163, ¶ 11, 150 A.3d 810.  We begin with the operative facts.  The court found that the officer parked his cruiser behind Turner's car, activated the cruiser's emergency lights, and asked Turner for his license and registration.  The Winslow officer was in Waterville as a result of a legitimate pursuit of a motorist who traveled into Waterville in the course of a traffic stop that originated in Winslow.  The Winslow officer directly observed Turner's erratic and potentially dangerous operation of the car, and the Winslow officer's contact with Turner occurred immediately following that erratic operation and after Turner had himself stopped his car in the parking lot.  Finally, the record reflects that the Winslow officer contacted the Waterville dispatch center and that the Waterville officer arrived within minutes of that contact.

[¶10]  On these facts, the Winslow officer certainly had sufficient articulable suspicion of either the commission of a crime or the existence of a health and safety crisis to support the stop of Turner's vehicle, had the officer been operating within his geographic authority.  Thus, the legal question presented is whether the extraterritorial nature of the stop rendered it "unreasonable" for purposes of a Fourth Amendment analysis, requiring

suppression of the evidence obtained during the Winslow officer's stop of Turner.

B.    Violation of the Fresh Pursuit Statute

[¶11]    The geographic scope of the Winslow officer's authority is defined by statute.  Maine's fresh pursuit statute provides, in pertinent part, "No police officer has any authority in criminal or traffic infraction matters beyond the limits of the municipality in which the officer is appointed, except," as relevant here, to "[a]rrest a person who travels beyond the limits of the municipality in which the officer is appointed when in fresh pursuit of that person."  30-A M.R.S. § 2671(2)(E).

[¶12]    An exception to the limitations set out in section 2671(2)(E) exists when the officer observes the commission of a crime outside of his or her municipality.  A municipality may authorize its police officers who have completed the basic training course required for continued full-time employment to make warrantless extraterritorial arrests of "[a]ny person who has committed or is committing in the officer's presence any Class D or Class E crime."  30-A M.R.S. § 2671(2-A); 17-A M.R.S. § 15(1)(B) (2016); *see also* 25 M.R.S. § 2804-C (2016).  Pursuant to section 2671(2-A), the Town of Winslow has authorized its full-time police officers to make such

extraterritorial arrests "if, when possible, the law enforcement agency of a foreign municipality in which the arrest is to be made is notified in advance or, when not possible, the law enforcement agency of the foreign municipality in which the arrest has been made is notified immediately after the arrest." Winslow, Me., Code § 2-44 (incorporating the language in section 2671(2-A)).

[¶13]  Here, the entire encounter between Turner and the Winslow officer took place in Waterville outside that officer's territorial limits. Accordingly, although the "fresh pursuit" authority set out in section 2671(2)(E) applied to the Winslow officer's pursuit of the motorist across the bridge into Waterville, that provision did not apply to his stop of Turner. Thus, for the Winslow officer to have had statutory authority to seize Turner in Waterville, he must have complied with the Winslow ordinance enacted pursuant to section 2671(2-A).

[¶14]  Pursuant to section 2671(2-A) and the Winslow Code, a Winslow officer acting outside of the officer's municipality must contact the applicable municipal law enforcement agency as soon as possible.  Turner argues that his seizure was unauthorized because the Winslow officer did not notify Waterville police in advance of the stop despite the officer's testimony that it was "possible" to do so.  The trial court twice declined to make that factual

finding, and the court did not make any other finding regarding the exact timing of the contact. Because the defendant specifically sought further factual findings, our review is confined to the court's explicit findings. In the absence of findings either that the officer notified Waterville in advance of the stop or that it was not possible for the officer to have done so, we cannot affirmatively conclude that the officer had statutory and municipal authority to seize Turner outside of his territorial limits. *Cf. Ehret v. Ehret*, 2016 ME 43, ¶ 12, 135 A.3d 101 (confining appellate review to the trial court's explicit findings that are supported by the record when a motion for further findings of fact and conclusions of law has been filed pursuant to M.R. Civ. P. 52). Accordingly, we assume without deciding that the officer acted without statutory authority when he approached Turner in his stopped car.

C.    Exclusionary Rule

[¶15]  Thus, the question presented is narrowed to this:  in the context of these facts, where (1) the officer had a reasonable and articulable suspicion that a crime had been committed in his presence, or that a person was in need of assistance, in the neighboring municipality but (2) the officer was without statutory authority to act in that municipality, was the "seizure" unreasonable

11

for purposes of the Fourth Amendment, thereby requiring suppression of the evidence?[4]

[¶16] Turner argues that, based on our precedent, the officer's conduct was unreasonable. He contends that the evidence should be suppressed because his conduct was not necessary to prevent imminent harm, was not carried out for community caretaking purposes, and was not undertaken at the request of Waterville law enforcement.

[¶17] A review of the precedent on which Turner relies is illuminating. In *Jolin*, we first considered whether the exclusionary rule applied when an arrest based on probable cause was made in violation of the fresh pursuit statute. 639 A.2d at 1064. In that case, a Brewer police officer who was in Bangor returning from a coffee break stopped and arrested a driver whom she had witnessed driving erratically in Bangor. *Id.* at 1063. The exclusionary rule did not require suppression because "the officer had probable cause to arrest [the] defendant and her action was reasonable in light of the immediate need to prevent [him] from harming himself or others." *Id.* at 1064.

---

[4] The "exclusionary rule applies to violations of a defendant's Fourth Amendment right to be free from unreasonable searches and seizures." *State v. Jolin*, 639 A.2d 1062, 1064 n.2 (Me. 1994) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). As we have held on several occasions, however, "evidence obtained from an extraterritorial arrest based on probable cause should not *per se* be excluded." *Id.* at 1064.

[¶18]  In *State v. Pike*, a Milo officer approached the driver of a car who had pulled over just beyond the Milo town line to see whether there was a problem with the driver or if the car had broken down.  642 A.2d 145, 146 (Me. 1994)*.*  After observing indicators of impairment, the officer performed a license check and notified the appropriate law enforcement agency of the stop.  *Id.*  We held that, even if the officer had violated the fresh pursuit statute—which we assumed but did not decide—the exclusionary rule did not apply because the officer had probable cause to detain the driver, and he "acted reasonably and did not intentionally disregard the territorial limits to which he was subject in order to ferret out crime."  *Id.* at 147.

[¶19]  Similarly, in *Rideout*, we affirmed a defendant's conviction when a Fort Fairfield officer traveling in Presque Isle observed a vehicle he believed was being driven by a driver whose license had been suspended, requested that a Presque Isle officer stop the vehicle, and was told by the dispatcher to make the stop himself.  2000 ME 194, ¶¶ 2-3, 9, 761 A.2d 288.  We held that "a reasonable and articulable suspicion satisfies the probable cause component of the *Jolin* and *Pike* test," that the officer's actions were reasonable, and that the officer was not attempting to ferret out crime with intentional disregard of his territorial limits.  *Id.* ¶¶ 8-9.

[¶20]  Contrary to Turner's contention, the circumstances in *Jolin*, *Pike*, and *Rideout* do not support his assertion that the stop here was unreasonable. Taken together, the cases stand for the proposition that the exclusionary rule does not require the suppression of evidence if the extraterritorial exercise of the officer's authority was (1) supported by the law and constitutional requirements that would have applied had the officer been within his lawful territory; (2) justified by the facts surrounding the stop; and (3) not made unreasonable by the presence of other factors, such as a *willful* disregard of territorial limits, the seeking out of crime in another territory, or a complete failure to contact the local law enforcement agency.  Although we have not decided "the point at which a violation of the fresh pursuit statute might trigger an exclusionary rule," *Pike*, 642 A.2d at 147, and we do not do so here, we have indicated that an intentional disregard of territorial limits to ferret out crime could require the suppression of evidence, *see Rideout*, 2000 ME 194, ¶ 9, 761 A.2d 288; *Jolin*, 639 A.2d at 1064; *Pike*, 642 A.2d at 147.

[¶21]  In the matter before us, the officer did not intentionally make an excursion into Waterville to ferret out crime; rather, he happened to observe a crime being committed while engaged in a lawful, extraterritorial traffic stop. *See* 30-A M.R.S. § 2671(2)(E).  He also communicated his actions promptly

enough that a Waterville officer arrived on the scene almost immediately. Furthermore, based on the officer's observations of the driver striking the median and operating erratically, the officer could have reached several reasonable conclusions justifying the officer's further investigation. For example, until the officer located the vehicle parked in the bank's parking lot, the officer could have reasonably believed that the driver would continue to pose an imminent risk to public safety or was himself in some circumstance needing assistance. Until the officer checked the driver's condition through personal contact, the officer could have been reasonably acting in his community caretaking capacity. Under all of these circumstances, the officer's request for Turner's license and registration during the very brief period between making contact with him and the arrival of the Waterville officer was not unreasonable.

[¶22] In sum, the Winslow officer's action of pursuing an erratically operated vehicle was reasonable, as was his initial contact with the driver, and the officer did not intentionally disregard his territorial limits in an attempt to ferret out crime. The motion court did not err in denying Turner's motion to suppress.

The entry is:

Judgment affirmed.

---

Scott F. Hess, Esq. (orally), The Law Office of Scott F. Hess, LLC, Augusta, for appellant Ryan Turner

Maeghan Maloney, District Attorney, Francis Griffin, Asst. Dist. Atty. (orally), and Mary-Ann Letourneau, Stud. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine

Waterville District Court docket number CR-2015-289
FOR CLERK REFERENCE ONLY