**STATE of Maine**

v.

**William Maynard SAWYER.**

Supreme Judicial Court of Maine.

Feb. 7, 1974.

David M. Cox, County Atty., Bangor, for plaintiff.

Goodman & Goodman by Michael E. Goodman, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

The building occupied by Thompson Tree Service, Inc. in Brewer was broken into about midnight on September 11, 1971 and five chain saws were stolen. On September 21 a Mr. Donald Doughty telephoned the Brewer Police Department and requested the presence of a police officer. Sergeant Shuman responded to the call. When he arrived at Mr. Doughty's home he found Mr. Doughty, who is a self-proclaimed alcoholic, highly intoxicated and incoherent. Mr. Doughty insisted that he wished to give the police a statement but the officer told him he was too intoxicated to be responsible and that he would see Mr. Doughty the next day if Mr. Doughty came to the police station in a sober condition.

The next day, while sober, Mr. Doughty confessed to the officer that he and the Defendant had made the Thompson break and had stolen the chain saws.

The Defendant and Mr. Doughty were both indicted on a charge of breaking, entering and larceny in the nighttime. The Defendant was tried before a jury January 18, 1972 and was convicted. He was released on bail pending sentence. On January 21, 1972 the Defendant failed to appear for sentence and he and his bail were called and defaulted and a warrant of arrest issued against Defendant. Defendant was finally brought before the Court more than a year later, on April 6, 1973, and was sentenced.

Defendant appealed from his conviction. We deny his appeal.

**832**

At trial, the State's evidence as to Defendant's participation in the crime came entirely from the testimony of Mr. Doughty. The jury also heard Mr. Doughty testify that on one occasion prior to trial the Defendant took him to the Defendant's attorney's office where Mr. Doughty made a statement renouncing his earlier accusation against Defendant. Mr. Doughty explained this repudiation to the jury as being the result of his fear of the Defendant plus his having consumed a large quantity of beer. The truth, he said, was, as he had told Sergeant Shuman, that Defendant had committed with him the breaking, entering and larceny. He said two factors induced him to confess and implicate the Defendant—he "wanted to make a statement to clear my mind on Thompson Tree Service that I had broken into with William Sawyer" and he was also angry because he believed the Defendant was the person who had assaulted him a few days after the break.

Defendant did not testify but several alibi witnesses placed him elsewhere at the time Mr. Doughty said the crime was committed.

*Sufficiency of the evidence to support a conviction*

■ Now, the Defendant's new counsel on appeal asserts that the verdict was contrary to the weight of the evidence. However, although the Defendant had moved for judgment of acquittal (which was denied) at the close of the State's case, he filed no motion for acquittal at the close of all the evidence (M.R.Crim.P., Rule 29(a)) or within 10 days after the verdict of guilty (M.R.Crim.P., Rule 29(b)) and filed no motion for new trial within 10 days after the verdict (M.R. Crim.P., Rule 33).

As we pointed out in State v. Rowe, Me., 238 A.2d 217 (1968), a motion for acquittal made *prior* to the close of *all* evidence does not present for review the sufficiency of *all* the evidence to support a verdict of guilty. Therefore, as we again explained in State v. Pullen, Me., 266 A.2d 222, 229 (1970) and most recently in State v. Gamage, Me., 301 A.2d 347 (1973), the foundation for such appellate relief not having been laid at trial level, the sufficiency of the evidence to support the verdict is not before us.[1]

*Conviction on the uncorroborated testimony of an accomplice*

■ The Defendant also urges us that we should now depart from our policy of long standing of allowing convictions to be had on the uncorroborated testimony of an accomplice. This issue was re-examined by us recently in State v. Smith, Me., 312 A.2d 187 (1973) and in an opinion filed after Defendant's brief had been written and filed, we rejected Mr. Smith's contention that our rule should be changed. After considering Defendant's argument we still remain unconvinced that the barring of convictions based upon the uncorroborated testimony of an accomplice is the more efficacious rule.

*Defendant's motion for new trial based upon newly discovered evidence*

On July 31, 1973—about a year and a half after Defendant's conviction and while this appeal was pending—the inconstant Mr. Doughty appeared at the Penobscot County Sheriff's office and made a statement under interrogation by Defendant's new counsel. After having sworn to tell the truth before a Notary Public, he recanted his trial testimony and said that he had implicated the Defendant falsely because he held a grudge against the Defendant. The Defendant promptly

1. We find no manifest error which would entitle the Defendant to a new trial in spite of his not having first presented the issue at trial level. M.R.Crim.P., Rule 52(b). The record demonstrates a classic example of evidence which, although disputed, would, if believed by the jury, support a verdict of guilty.

filed a motion for a new trial which, at hearing, he was permitted to amend into a motion for a new trial on the ground of newly discovered evidence.

Eight days later, this motion was heard before a Justice of the Superior Court. The Justice denied the motion. The Defendant's appeal from his denial was argued with his appeal from his conviction.

Although the Justice advised Mr. Doughty that if his testimony conflicted with his prior sworn statement it might incriminate him in the crime of perjury, the witness declined to claim the privilege accorded him by the Fifth Amendment. The sworn statement was introduced. Mr. Doughty testified and under oath withdrew his recantation. He again maintained that his trial testimony was the truth. He admitted that he had made the written recantation at the County Jail but said that it resulted from more threats that had been made against his wife and children and also because, he said, "I was drinking quite heavy, too, at the time." The Defendant, he reiterated, had participated with him in the Thompson Tree Service, Inc. break.

Defendant's counsel offered to produce two deputy sheriffs who would testify that Mr. Doughty "was not drunk" at the time of the recantation and also the Defendant's trial attorney who would testify as to the recantation which Mr. Doughty had made at his office before trial.

■ We have said that, in order to justify the granting of a motion for a new trial on the ground of newly discovered evidence, the tests to be applied are:

"1.  [That] the evidence is such as will probably change the result if a new trial is granted.

2.  [That] it has been discovered since the trial.

3.  [That] it could not have been discovered before the trial by the exercise of due diligence.

4.  [That] it is material to the issue.

5.  [That] it is not merely cumulative or impeaching, unless it is clear that such impeachment would have resulted in a different verdict."

State v. O'Clair, Me., 292 A.2d 186, 197 (1972); State v. Casale, 148 Me. 312, 319–320, 92 A.2d 718, 722 (1952).

While an out-of-court recantation of a witness since trial may more correctly be termed newly *created* evidence, we will treat it as encompassed within the newly discovered evidence area of M.R.Crim.P., Rule 33. *See* Bridgham v. Hinds, 120 Me. 444, 115 A. 197 (1921).

■ The answer to our problem appears when we apply the 5th test to the facts presented to the Justice who heard the Defendant's motion.

The evidence which was presented to the Justice was merely impeaching and cumulative—impeaching because its evidentiary status would be that of an out-of-court statement inconsistent with his trial testimony (Kolasen v. Great Northern Paper Co., 115 Me. 367, 98 A. 1029 (1916)) and cumulative because he had made a similar inconsistent statement once before.

We have said that a recantation by an important state's witness does not as a matter of law entitle a convicted Defendant to a new trial. State v. Casale, 150 Me. 310, 110 A.2d 588 (1954). Otherwise, as we have noted, the power to give a convicted person a new trial would rest with the witnesses who testified against him. State v. Dodge, 124 Me. 243, 249, 127 A. 899, 902 (1925). What this Justice heard was not a recantation of trial testimony but an admission by Mr. Doughty that he had made an out-of-court recantation of his trial testimony. This admission was coupled with the witness' insistence that his trial testimony was the truth and that his renunciation of it had been made because of fear.

**834**

■ The Defendant complains that the Justice should also have heard the testimony of Defendant's trial counsel who would have testified to the earlier, pre-trial recantation and of the two deputy sheriffs who would have said that Mr. Doughty was "not drunk" at the time he made the second statement. While we believe it would have been preferable for the Justice to have heard the proffered testimony, we see no prejudice to the Defendant by his refusal. The Justice was already aware of the witness' first, pre-trial, recantation. While the witness did add that he was "drinking quite heavy, too, at the time", he did not claim that his recantation at the county jail resulted from his being drunk.[2]

■ As the Justice's responsibility of hearing the new testimony, observing the conduct of the witness, weighing the value of the evidence and its potential for resulting in a different verdict if presented at a new trial (State v. Irons, 137 Me. 294, 298, 18 A.2d 798, 801 (1941) ) is essentially a determination of fact, his decision must stand on appeal unless it is clearly erroneous. State v. O'Clair, supra, 292 A.2d at 197.

The Justice knew that the jury had heard that the witness had recanted once *before* his trial testimony and that the jury had heard his explanation that his recantation had resulted from fear and had still accepted his testimony as true. The Justice evaluated the probable impeachment effect of the additional recantation, along with the witness' in-court repudiation of the recantation, and was not satisfied that it was clear that the new evidence would result in a different verdict if the case was retried. We cannot say that he was clearly wrong.

The entry will be:

Appeals denied.

All Justices concurring.

---

2. While a series of recantations and retractions of recantations could doubtless continue to a point where the credibility of a state's witness would be so suspect that a court should find as a matter of law that he was unworthy of belief, the Justice obviously felt that the point had not been reached here. We agree.