1997 ME 221

**STATE of Maine**

v.

**Christopher A. CARR.**

Supreme Judicial Court of Maine.

Argued Oct. 6, 1997.
Decided Nov. 24, 1997.

---

Stephanie Anderson, District Attorney (orally), Julia Sheridan, Asst. Dist. Atty., Portland, for the State.

David Beneman (orally) Levenson, Vickerson & Beneman, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Defendant Christopher Carr appeals from the judgments entered in Superior Court (Cumberland County, *Crowley, J.*) after a jury verdict finding him guilty of three counts of arson, four counts of attempted murder, one count of aggravated criminal mischief, and one count of violating a protective order. On appeal, defendant challenges the sufficiency of the indictment, the court's suppression ruling, an evidentiary ruling, the sufficiency of the evidence, and the sentences. We find that one of the arson counts in the indictment is insufficient. We vacate the judgment on that single count, affirm the judgments on the remaining counts, and remand for resentencing.

[¶ 2] The facts presented at trial may be summarized as follows: Defendant and his wife were separated and involved in divorce litigation that included a dispute over the custody of their three-year-old son. The wife had petitioned for protection from abuse and received a protective order from the District Court. At approximately 2:00 a.m. on July 28, 1995, the Brunswick police and fire departments were notified of two fires at the wife's residence. She lived in a second floor apartment, in a four-unit, wood-framed building. A staircase extended from the ground to a porch on the second floor. One of the two doorways opening onto the porch provided the sole means of access to the wife's apartment. On the evening in question, the wife, her son, and her parents were sleeping in the apartment. They awoke to find a fire burning on the porch directly in front of their door. They observed another fire on the parents' truck parked at the foot of the stairway leading to the porch. They extinguished the fires and the wife called 911 from a neighbor's phone after finding that her phone had been rendered inoperable by the fire.

[¶ 3] The State contended at trial that defendant set the fires in an effort to kill his wife, his three-year-old son, and his wife's parents. Fire investigators testified that there were two separate fires on the exterior of the building—one at the foot of the apartment door and one on the outside wall of the apartment. The burns on the wall suggested a flammable substance had been used to start the fire. The investigators testified that they believed the fires on the door and the wall were set before the truck was set on fire.

[¶ 4] Defendant testified and admitted that he set fire to the truck, but maintained that the fire on the door and wall was accidental. He offered the explanation that the can of Coleman fuel he used as an accelerant to start the truck fire ignited in his hands and

landed on the porch when he threw it aside. In an effort to remove it from the porch, he kicked it and it came to rest in front of the apartment door. He stated that he removed the can and attempted to stamp out the fire, but acknowledged that the status of the fire on the door and wall was at least uncertain when he left. He maintained that he had no intention of harming the occupants of the apartment. The jury returned a verdict of guilty on four counts of attempted murder, three counts of arson,[1] one count of aggravated mischief, and one count of violating a protective order. Defendant was sentenced to 30 years, with all but 25 years suspended, on the attempted murder and arson counts.

### Sufficiency of the Indictment

[¶ 5] Defendant first argues that one of the three charges of arson set forth in the indictment is defective because it fails to allege an essential element of the crime charged. We agree. Count VI of the indictment alleges:

> that on or about the Twenty-eighth day of July 1995 in the Town of Brunswick, County of Cumberland and State of Maine, the above-named defendant Christopher Carr did start, cause or maintain a fire or explosion which recklessly endangered the occupants therein.

Missing is the necessary allegation that defendant started a fire "[o]n his own property or the property of another." 17–A M.R.S.A. § 802(1)(B)(1) (1983 & Supp.1996). Although one of the other arson charges, Count V, refers to the apartment as "the property of another" and names the owner, each count stands alone and must aver the essential elements of the crime charged. *State v. Pierce*, 438 A.2d 247, 255–56 (Me.1981). We vacate the conviction on Count VI and remand with instructions to dismiss.[2]

---

1. Count I through IV alleged that defendant attempted to murder each of the four occupants of the apartment. Count V alleged that defendant started a fire at the apartment with the intent to destroy the property, and Count VI alleged that he started a fire that recklessly endangered the occupants. Count VII alleged that he started a fire on the automobile with the intent to damage that property.

2. Because we direct the dismissal of Count VI, we need not address defendant's contentions that the arson charges in Counts IV and VI are "multiplicitous."

*The Suppression Ruling*

[¶ 6] Prior to trial, defendant moved to suppress evidence obtained as a result of an investigatory stop of his vehicle and alternatively moved to suppress statements he later made to a police officer. At the suppression hearing, the State presented the testimony of Officer Ramsey of the Brunswick Police Department. Officer Ramsey responded to the 911 call and when he arrived, he found evidence of a vehicle fire and an apartment fire. He spoke with defendant's wife, and she identified defendant's handwriting from an inscription in the dirt near the truck that referred to her in derogatory terms. Based on his own knowledge of defendant's prior problems with his wife, Officer Ramsey dispatched an order for an officer to check and see if defendant was at his home. Officer Lever of the Bath Police Department responded to the radio dispatch. He was given defendant's address, a description of his vehicle, its registration number, and was told that defendant was a suspect in an arson case involving his wife. After checking defendant's home twice without success, Officer Lever saw defendant driving his vehicle toward his home. The officer turned on his blue lights and defendant stopped in his own driveway.

[¶ 7] Defendant first maintains that Officer Lever did not have a reasonable and articulable suspicion to make an investigatory stop because the collective knowledge of the police was not communicated to him and he was not ordered to detain or question defendant. Reasonable and articulable suspicion to conduct an investigatory stop can rest on the collective knowledge of the police. *State v. Gervais*, 394 A.2d 1183, 1189 (Me. 1978) (holding that collective knowledge of the police transmitted by radio dispatch justified stopping a vehicle). In dealing with related questions concerning the validity of warrantless arrests, we have noted that probable cause is evaluated from collective information known to the police rather than the personal knowledge of the arresting officer. *State v. Smith*, 277 A.2d 481, 488 (Me. 1971). We have also noted that there may be cases "in which certain police information could not be considered as supportive of

probable cause if not communicated." We went on to observe, however, that this "rule must be applied on a case-by-case basis." *State v. Parkinson*, 389 A.2d 1, 8 at n. 8 (Me.1978).

[¶ 8] Although the radio communication did not explicitly instruct the officer to detain defendant, it did so implicitly. The officer was told that defendant was a suspect in an arson involving his wife. When he passed defendant driving down the street, the officer did not know if defendant would stop or attempt to leave. It was reasonable for the officer to conclude from the radio dispatch that he was to stop defendant if necessary.

[¶ 9] Because an investigative stop is justified on the basis of the collective knowledge of the police, and because an order to stop defendant was reasonably inferred by the officer, the court did not err in determining the officer had a reasonable and articulable basis for stopping defendant's vehicle. *See State v. Eastman*, 1997 ME 39, 691 A.2d 179.

[¶ 10] Defendant next argues that once Officer Lever stopped his vehicle and requested information from him, he was subjected to custodial interrogation. He argues that because he was not given an immediate *Miranda* warning, his subsequent statements to the police, including those which were obtained at the police station after he was properly advised of his rights, should have been suppressed. A *Miranda* warning is required only if a defendant is in custody and subject to interrogation. *State v. Powell*, 640 A.2d 209, 210 (Me.1994) (citing *State v. Cumming*, 634 A.2d 953, 956 (Me.1993)). A trial court's determination of custody *vel non* will be reversed only if it is not rationally supported. *State v. Powell*, 640 A.2d at 211.

[¶ 11] There is evidence in this record that rationally permits the conclusion that defendant was not in custody when he spoke with the officers in his driveway. During the relevant period of time, he was never confined in any way and only one officer spoke with him at a time. Although defendant testified at the suppression hearing that he did not feel free to leave, the court was not bound to accept his testimony and other evi-

dence permitted the court to rationally conclude that a reasonable person, in those circumstances, would not have felt constrained to the degree of a formal arrest. *See State v. Powell*, 640 A.2d 209 (Me.1994) (no custody where defendant was questioned at his apartment for two hours without physical constraint). The court did not err.

### Evidentiary Ruling

[¶ 12] Defendant argues that the court erred in admitting as a trial exhibit a charcoal lighter fluid can allegedly found at the scene of the fire.[3] Officer Ramsey testified that he saw the can at the crime scene, waited for it to be photographed, and later placed an evidence tag on the can at the police station. He did not specifically recall transporting the can to the police station, but testified about his routine procedure in seizing evidence, and stated that he would never tag evidence seized by another officer. Defendant contends that there was a break in the chain of custody that renders the exhibit inadmissible.

[¶ 13] "Authenticity is cast in terms of conditional relevance issues and a trial court's relevancy determinations are reviewed for clear error." *State v. Poirier*, 1997 ME 86, ¶ 4, 694 A.2d 448, 449. Any break in the chain of custody of the exhibit was minor and may affect the weight the jury assigns to the evidence, but not its admissibility. *State v. Nason*, 498 A.2d 252, 256 (Me.1985). The testimony of Officer Ramsey and others was sufficient to make it more probable than not that the can introduced at trial was the can seized at the crime scene. Testimony regarding the officer's routine procedure for handling evidence was sufficient to establish the conditional authenticity of the exhibit. *See State v. VanSickle*, 434 A.2d 31, 36 (Me.1981).

### Sufficiency of the Evidence

[¶ 14] Defendant challenges the sufficiency of the evidence for the jury to find him guilty of attempting to murder his moth-er-in-law. Defendant admitted that he spoke with his father-in-law by phone just before the fire. He argues, however, that there is no evidence that he knew that his mother-in-law was also present at the apartment. We review the "evidence in the light most favorable to the State to determine whether a fact-finder rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Davis*, 1997 ME 115, ¶ 7, 695 A.2d 1183, 1184. Contrary to defendant's assertion, there was sufficient evidence from which a jury could rationally conclude that defendant knew that his wife's parents traveled together and therefore, if their truck was in the driveway, he knew both parents were visiting his wife.

### Sentence Review

[¶ 15] Finally, defendant argues that the court erred in setting his basic sentence for four counts of attempted murder and three counts of arson within the extended 20–to–40–year sentencing range for Class A crimes. The court imposed a separate sentence on each count but explained that it viewed all of the counts together in determining the nature and seriousness of each of the Class A crimes:

> Even though the sentences that are to be imposed for this conduct of the defendant are to be concurrent sentences, I think that one looks at the entire picture of what the defendant did. And the attempted murder charge informs the analysis on the arson charge and the arson charge informs the analysis on the attempted murder charge and the violation of the protection from abuse gives context and character to the conduct the defendant engaged in on July 28th 1995.

[¶ 16] Because Count VI, an arson involving the endangerment of persons, has been set aside, the court's sentencing analysis requires reconsideration. Accordingly, we remand for resentencing and have no occasion to address the sentencing issues raised on appeal.

---

**3.** The content of this can is distinct from the Coleman fuel that defendant admitted he used to start the truck fire. The charcoal lighter was present at the scene before and after the fire. An expert witness for the State testified that soil samples in the area of the truck tested positive for a petroleum distillate consistent with the charcoal lighter fluid.

The entry is:

Judgment with respect to Count VI vacated. Remanded with instructions to dismiss that portion of the indictment. Judgments with respect to Counts I through IX, exclusive of VI, affirmed. Sentences are vacated and remanded for resentencing.

