MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:    2016 ME 158
Docket:      Aro-15-638
Argued:      September 8, 2016
Decided:     October 20, 2016

Panel:       SAUFLEY, C.J., and <u>ALEXANDER</u>, MEAD, GORMAN,* JABAR, HJELM, and HUMPHREY, JJ.


# STATE OF MAINE

v.

# CHAD D. LAGASSE


ALEXANDER, J.

[¶1]  Chad D. Lagasse appeals from the judgment and conviction entered in the Superior Court (Aroostook County, *Hunter, J.*) following a jury verdict finding him guilty of aggravated trafficking of scheduled drugs pursuant to 17-A M.R.S. § 1105-A(1)(B)(1) (2015).[1]  Lagasse contends that the Superior Court erred by denying his motion to suppress.  We find no error and affirm the judgment.

---

* Although not available at oral argument, Justice Gorman participated in the development of this opinion.  *See* M.R. App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

[1]  The court also issued a forfeiture order pursuant to 15 M.R.S. § 5826 (2015).  Lagasse was sentenced to fifteen years in prison with all but four years of the sentence suspended, four years of probation, and a $5,000 fine.

## I. CASE HISTORY

[¶2] When a defendant challenges the sufficiency of the evidence to support a finding, we review the evidence—here the evidence at the suppression hearing—and all reasonable inferences that may be drawn from that evidence, in the light most favorable to the trial court's findings, to determine whether the court rationally could have found the contested facts at issue. *See State v. Murphy*, 2016 ME 5, ¶ 5, 130 A.3d 401; *State v. Jones*, 2012 ME 88, ¶ 7, 46 A.3d 1125.

[¶3] The Superior Court made the following findings, which are supported by the record. On or about January 3, 2013, two masked men burst into the victim's home in Caribou and demanded money from her. At least one of the men brandished a firearm. The victim gave them money, and the men left the victim physically unharmed but shaken. The victim called the Caribou Police Department to report the robbery. She reported that she recognized one of the men as Eric Mowatt but could not identify the other robber. Police located Mowatt within a few hours and interviewed him. At that time, he denied any involvement in the robbery. Based on the victim's report, police arrested Mowatt and transported him to the Aroostook County Jail.

[¶4]   Several days later, Mowatt contacted the police from the jail.  He admitted his involvement in the robbery and identified Lagasse as his accomplice.  He stated that the purpose of the robbery was to obtain money to satisfy Lagasse's drug debt.  The police continued their investigation but were unable to locate Lagasse.

[¶5]   On January 19, 2013, Mowatt, who had been released on bail, contacted the police to tell them that Lagasse was at a store in Fort Fairfield in a silver Mazda Protégé with a special license plate called a "transport plate." Mowatt provided the license plate number.  The lead investigator emailed the officers of the Caribou Police Department to alert them to Lagasse's presence in the area.  He provided a description of the car and instructed officers to arrest Lagasse if they found him.  The lead investigator also instructed officers to find a reasonable basis to stop the car and to use caution when interacting with Lagasse.  No warrant for Lagasse's arrest was sought.

[¶6]  The following day, a Caribou police officer located a car matching the description provided by Mowatt but could not determine anything about its occupants.  The officer was following the car closely enough to read the transport plate when the car suddenly "veered sharply to the right" and changed lanes without signaling.  The officer executed a "high risk felony stop"

4

by radioing for assistance, drawing his weapon, and verbally commanding the driver to get out of the car and place his hands on the vehicle's roof. When the driver complied, the officer immediately recognized Lagasse and arrested him.

[¶7]  Lagasse was indicted on charges of robbery (Class A), 17-A M.R.S. § 651(1)(E) (2015), theft by unauthorized taking or transfer (Class C), 17-A M.R.S. § 353(1)(B)(4) (2015), illegal possession of a firearm (Class C), 15 M.R.S. § 393(1)(A-1) (2015), and aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(B)(1) (2015). The indictment also included a claim for criminal forfeiture of property, 15 M.R.S. § 5826 (2015). The aggravated trafficking charge was based on pills that Lagasse possessed or apparently dropped on the ground at the time of his arrest.

[¶8] Lagasse moved to suppress evidence of drugs that the arresting officer found on and near Lagasse when he was arrested, arguing that police lacked probable cause for Lagasse's warrantless arrest because Mowatt's identification was unreliable, the stop for failure to use a turn signal was

pretextual, and the officer lacked reasonable articulable suspicion to stop the vehicle.[2]

[¶9] The court held a testimonial hearing on the motion on May 20, 2014, at which the lead investigator and arresting officer testified. By written order, the court denied the motion, finding that Mowatt's identification was sufficiently reliable because Mowatt had admitted personal involvement in the robbery. The court further found that the car stop was lawful based on Lagasse's sudden change in direction without using a turn signal. The court denied Lagasse's motion for further findings of fact and conclusions of law. *See* M.R. Crim. P. 41A(d).

[¶10] A jury trial was held on November 12-13, 2015. The jury found Lagasse guilty of aggravated trafficking but not guilty of the three charges related to the home invasion. Lagasse filed a timely notice of appeal. 15 M.R.S. § 2115 (2015); M.R. App. P. 2(b)(2)(A).

## II. LEGAL ANALYSIS

[¶11] "We review the trial court's factual findings on a motion to suppress for clear error, and its ultimate determination regarding

---

[2] Lagasse's written motion to suppress asserted only that the stop of his vehicle was illegal because it was based on pretext, rather than reasonable and articulable suspicion. At the hearing on that motion, however, Lagasse also argued that the officer lacked probable cause to arrest him.

6

suppression de novo." *State v. Bryant*, 2014 ME 94, ¶ 8, 97 A.3d 595. Because Lagasse does not challenge the trial court's factual findings, we review only the legal determination. *See id.* We will uphold the trial court's "denial of a motion to suppress if any reasonable view of the evidence supports the trial court's decision." *State v. Kierstead*, 2015 ME 45, ¶ 14, 114 A.3d 984.

[¶12] On appeal, Lagasse contends that (A) the officer did not have probable cause to arrest him for robbery, and (B) the officer did not have reasonable articulable suspicion to stop his car. We address each contention in turn.

A. Probable Cause to Arrest

[¶13] Law enforcement officers are authorized to make warrantless arrests under certain circumstances, including when an officer has probable cause to believe that a person has committed any Class A, Class B, or Class C crime. 17-A M.R.S. § 15(1)(A)(2) (2015); *cf. State v. Martin*, 2015 ME 91, ¶ 8, 120 A.3d 113. "Probable cause exists where facts and circumstances within the knowledge of the officers and of which they have reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee did commit or is committing the felonious offense."

*State v. Parkinson*, 389 A.2d 1, 8 (Me. 1978); *see also Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003).

[¶14] Probable cause includes the collective information known to the police and is not limited to the personal knowledge of the arresting officer. *State v. Carr*, 1997 ME 221, ¶ 7, 704 A.2d 353. The test is an objective standard. *State v. Enggass*, 571 A.2d 823, 825 (Me. 1990). "The probable cause standard . . . has a very low threshold." *State v. Webster*, 2000 ME 115, ¶ 7, 754 A.2d 976.

[¶15] Here, the trial court found that the magnitude of Mowatt's admission of personal involvement in the armed robbery carried sufficient reliability to overcome any flaws in Mowatt's statements to the police and supported the objective standard required for a probable cause determination. Lagasse contends that the court erred in its probable cause determination by relying on an unreliable and uncorroborated statement of an informant.

[¶16] Lagasse's characterization of Mowatt as an "informant" is misplaced.[3] Mowatt was an accomplice-witness to the crime and had

---

[3] Lagasse supports his argument with a long list of cases involving police informants in drug investigations. We have described police informants as persons who "are often criminally disposed or implicated, and supply their 'tips' to the authorities on a recurring basis, in secret, and for

8

provided accurate information identifying the vehicle in which Lagasse was located.

[¶17]   A conviction, which requires a burden of proof beyond a reasonable doubt, may be sustained upon the uncorroborated testimony of an accomplice.  *See State v. Johnson*, 434 A.2d 532, 534-535, 537 (Me. 1981) (affirming conviction for murder principally based on testimony of accomplice whose credibility was challenged); *State v. Jewell*, 285 A.2d 847, 851-852 (Me. 1972) (affirming conviction for breaking, entering, and larceny when the uncorroborated accomplice testimony formed the basis for the jury's verdict); *State v. Morey*, 126 Me. 323, 327, 138 A. 474, 475 (1927); *State v. Cunningham*, 31 Me. 355 (1850).

[¶18]  Because uncorroborated testimony of an accomplice may sustain a conviction, which requires the highest burden of proof, such statements of an accomplice may satisfy the lower standard of proof required to demonstrate probable cause.  Here, in the totality of circumstances of this case, Mowatt's statement to police identifying Lagasse as his accomplice during the robbery was sufficient evidence, by itself, to provide the police with probable cause for Lagasse's arrest.

pecuniary or other personal gain."  *State v. Parkinson*, 389 A.2d 1, 9 (Me. 1978) (quoting *People v. Ramey*, 545 P.2d 1333, 1336 (Cal. 1976)).  That is not the case at hand.

[¶19]     Lagasse further contends that police were required to corroborate Mowatt's identification because of inconsistencies in Mowatt's statement. However, the uncorroborated statement of an accomplice may, under certain circumstances, be credible despite inconsistencies.  *See State v. Sawyer*, 314 A.2d 830, 832 (Me. 1974).  In *Sawyer*, we upheld a conviction for breaking, entering, and larceny in the nighttime when the State's evidence as to the defendant's participation in the crime came entirely from the testimony of the accomplice, and the accomplice had renounced his accusation against the defendant on one occasion prior to trial.  *Id.*   Under a different set of circumstances, we found that a jury could have construed seemingly inconsistent answers made by an accomplice during his testimony in a manner that would be consistent with his prior description of events.  *State v. James*, 161 Me. 17, 22, 206 A.2d 410, 412 (1965).  We noted "the evidence in the case was not marked by that degree of inconsistency and lack of credibility which would preclude a finding of guilt beyond a reasonable doubt." *Id.*

[¶20]  Here, Mowatt's statement to police progressed from denying any involvement in the robbery to, eventually, admitting his participation and naming Lagasse as his accomplice.   Throughout the course of a police

interview or interrogation, it is not unusual for a suspect's statement to develop in stages. "Accomplices confessing their criminal activity with a defendant oftentimes are influenced . . . by such motives as malice toward the accused, fear, threats, promises or hopes of leniency or benefits from the prosecution." *Jewell*, 285 A.2d at 851. We cannot conclude that the inconsistencies in Mowatt's several statements were so significant that the statements could not satisfy the low burden of proof required to demonstrate probable cause.

B.      Reasonable Articulable Suspicion for the Traffic Stop

[¶21] "The Constitution requires only the presence of a reasonable and articulable suspicion to make an investigatory stop of a vehicle . . . ." *State v. Rideout*, 2000 ME 194, ¶ 6, 761 A.2d 288. A "finding of probable cause subsumes a finding of a reasonable and articulable suspicion." *Id.*; *see State v. Menard*, 2003 ME 69, ¶ 9, 822 A.2d 1143; *State v. Babcock*, 361 A.2d 911, 914 (Me. 1976). Because the officer had probable cause to arrest Lagasse, based on information previously communicated, the officer necessarily had a reasonable articulable suspicion to stop Lagasse's car. The vehicle stop was constitutionally permissible and the court properly denied Lagasse's motion to suppress.

[¶22]  Because we find that Lagasse's stop and arrest were lawful, we need not reach the other contentions advanced by Lagasse on this appeal.

The entry is:

Judgment affirmed.

---

**On the briefs and at oral argument:**

Christopher J. Coleman, Esq., Law Office of Christine M. Smith, Presque Isle, for appellant Chad Lagasse

Todd R. Collins, District Attorney, Prosecutorial District 8, Caribou, for appellee State of Main

Aroostook Superior Court docket number CR-2013-38
FOR CLERK REFERENCE ONLY