STATE OF MAINE
WASHINGTON, SS.

DISTRICT COURT
Machias
Docket No. WASCD-16-CR-291, 292

STATE OF MAINE )
          Plaintiff, )
                                 )
                                 )
          v. )
                                 )
                                 )
KAYLA STANLEY and )
ERIC FLETCHER
          Defendants.)

**ORDER ON MOTIONS
TO SUPPRESS**[1]

Before the court for hearing on April 11, 2017, came Defendants' Motions to Suppress. Present were Kayla Stanley and her attorney Matt Erickson, Esq., Eric Fletcher and his attorney Don Brown, Esq., and the State through District Attorney Matt Foster. The court heard testimony from MDEA Agents Ryan Allen, Ralph Pineo, Troy Bires and Timothy Frost. After hearing the court finds as follows.

Eric Fletcher ("Fletcher") and Kayla Stanley ("Stanley"), live and have a child together. On July 13, 2016, Stanley and Fletcher were arrested by Maine Drug Enforcement Agents. Fletcher was arrested on a warrant from Hancock County for Manslaughter and Trafficking in Scheduled Drugs. Stanley was arrested following a search of Fletcher's vehicle in which she was a passenger. As a result of that search,

---

[1] Each Defendant filed a motion to suppress seeking to suppress the evidence seized from a search of a common vehicle. The Motions were consolidated for hearing.

officers discovered and seized scheduled drugs. Each defendant has since been indicted for Aggravating Trafficking, Unlawful Trafficking, Unlawful Furnishing and Endangering the Welfare of a Child.[2] Each seeks to suppress the evidence seized from the vehicle.

On July 11th or 12th, 2016, Maine Drug Enforcement Agents met to plan to execute a Hancock County arrest warrant for Fletcher on charges of Manslaughter and Trafficking in Scheduled Drugs.[3] Senior Special Agent Troy Bires instructed agents from Washington County to proceed to Fletcher's house and observe the residence until the Hancock agents could arrive to assist with the execution of the arrest warrant. While Agents Ryan Allen and Ralph Pineo were observing the residence, Stanley, Fletcher and their minor child exited their home, got in their vehicle and drove away, apparently unaware they were being observed. Agents Pineo and Allen informed the Hancock agents of the Defendants' departure and then followed the vehicle until the vehicle entered a driveway off the Wing Siding Road in Harrington, Maine, some several miles away. Neither Agent Allen nor Agent Pineo had the ability to initiate a traffic stop for purposes of executing the arrest warrant because each was in an unmarked vehicle without lights and siren.

---

[2] Also as a result of the items seized from the vehicle, MDEA obtained a warrant for the search of Defendants' home. Neither Defendant contests the search warrant pertaining to the home or the items found therein.

[3] It was not clear to the court, based on the evidence submitted, just when the arrest warrant issued or when the alleged manslaughter and trafficking offense occurred.

Although there was some dispute about the order in which the agents arrived at the residence on the Wing Siding Road, the court finds that Agent Allen essentially arrived at the same time as the Fletcher vehicle and the remaining 3-4 agents arrived within seconds after, all in separate vehicles. At this point the situation became fairly chaotic. Some people from the residence were outside. Agent Allen, with weapon drawn, ordered the defendants out of the car and approached the driver's side of Fletcher's vehicle while announcing his authority. Agent Pineo then took Fletcher, arrested him pursuant to the lawful warrant and removed him at least a full car length away from Fletcher's own vehicle. Agent Bires, with gun drawn, ordered those present to remain still and then secured those individuals. Bires went to the residence to order people to exit in an attempt to secure the scene. The three individuals who exited were searched for weapons. No weapons were found on them and the officers had no reason to believe that any person on scene was dangerous or may access the vehicle to acquire a weapon.

In total there were five MDEA agents on scene, all simultaneously engaging in various aspects of securing the area. In addition to the defendants and their infant child, there were five bystanders. Once the police secured the scene, no one, including Stanley, was within 15 feet of Fletcher's vehicle.

While Agents Bires, Allen, Frost and Bagley were securing the scene, Agent Pineo moved Fletcher away from his vehicle and formally arrested him on the lawful warrant. Fletcher was at least a full car length away from his own vehicle. He was

3

handcuffed and under the supervision of Agent Pineo, and he was not within reaching distance of the passenger compartment of his vehicle. Similarly, Stanley, who had been removed from the car and placed at least 15 feet away while under the supervision of at least one of the agents, was not within reaching distance of the vehicle.

While arresting Fletcher, Officer Pineo conducted search incident to arrest and found a small container in Fletcher's shirt pocket which contained a substance Fletcher admitted was heroin. Once Pineo had conducted the search of Fletcher's person, he secured the evidence in the truck and placed Fletcher inside Pineo's vehicle. Pineo stayed with Fletcher from that point on.

Once all present were secured and after Pineo had already arrested Fletcher, Agents Bires and Frost searched the Fletcher vehicle, claiming to have done so because of: (1) the existence of the arrest warrant; (2) Fletcher had heroin on his person; (3) Bires believed Fletcher was at that particular residence to sell drugs; and (4) Fletcher was a known trafficker whom they had been investigating for some time. Aside from his beliefs about Fletcher's involvement in trafficking, neither Agent Bires nor any other witness provided any details about the basis for those beliefs. Nor did he or any other wintess provide an explanation for why Fletcher was under investigation. Neither Bires nor Allen listed any reasons whatsoever for searching the vehicle in the report each prepared shortly after the July 13ᵗʰ, 2016 incident.

4

During the search of Mr. Fletcher's vehicle, Agents Bires and Frost found a white bag and container beneath the front passenger seat. Inside the bag and the container, they found chunks off a finger of heroin, a number of foil packets and various items of drug paraphernalia. Cash was also found in the vehicle. Fletcher had by that point already been arrested on the pending warrant. Based solely on the fruits of the search, the agents then arrested Defendant Kayla Stanley. Each Defendant seeks to suppress the fruits of vehicle search.

Agent Bires claimed he observed the search of Defendant Fletcher by the arresting agent. The court does not find his testimony on this point credible. Agent Bires also claimed that the arresting agent spoke to him about the results of the patdown search and the heroin on Fletcher's person. The court does not find his testimony on this point credible either. At the time Agent Pineo was arresting and searching Fletcher, Agent Bires was dealing with various people at the scene and Agent Pineo testified that once he arrested Fletcher, he secured him in Agent Pineo's vehicle and stayed with him from that point on. At no time did Pineo inform the other officers that he had discovered heroin on Fletcher's person and at no time did Agent Pineo direct the searching Agents to search the vehicle.

## Discussion

The issue here presented is whether Agents Frost and Bires, who were aware of the Hancock County arrest warrant but were not aware that Agent Pineo had found

contraband on Fletcher pursuant to a search of his person incident to the arrest on that warrant, had lawful authority to search Fletcher's vehicle which was not within reaching distance of the Defendants Fletcher or Stanley.

The United States and Maine Constitutions guarantee the right to be secure from unreasonable searches and seizures. In most instances, a warrantless search or seizure is, as a matter of law, unreasonable and runs afoul of the constitution, unless the State establishes that the circumstances surrounding the search or seizure bring it within one or more specific exceptions to the supreme law's favor and mandate for a warrant. Two of the warrants are at issue in this case. Either the search of the Fletcher vehicle is permissible as a search "incident to his arrest," or the search must be supported by probable cause.

It has long been established that an officer may contemporaneously search a defendant's person "incident to his arrest" on a lawful warrant, in order to protect the officer and to preserve and secure evidence of crime. *Preston v. United States*, 376 U.S. 364, 367 (1964). To this extent, the heroin found on Fletcher by Agent Pineo was lawfully obtained and the defendants do not seek to suppress that evidence. The search of Mr. Fletcher's person was contemporaneous with his arrest on a lawful warrant. It was, therefore, reasonable and lawful.

The issue in this case is whether the doctrine of "search incident to arrest" extends to Mr. Fletcher's vehicle. Under existing legal authority, "police may search a vehicle incident to a recent occupant's arrest only if the arrestee is *within reaching*

6

*distance* of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the *offense of arrest."* *Arizona v. Gant,* 556 U.S. 332, 351 (2009) (emphasis added). Here, at the time Agent Pineo searched Fletcher's person, Fletcher was more than a car length away from his own vehicle and was handcuffed. Fletcher was thereafter placed inside Pineo's vehicle and in the Agent's presence. Neither Fletcher nor Stanley was within reaching distance of the vehicle at the time Agents Bires and Frost searched the vehicle. Moreover, no officer was in any way concerned about either defendant being armed or dangerous. The court concludes therefore that the search of Fletcher's vehicle fails to satisfy the *Gant* officer-safety or "reaching distance" justification.

With respect to the second prong of the *Gant* test, the First Circuit has defined "reason to believe" as requiring a "reasonable basis" to believe the vehicle contains evidence of the *offense of arrest. United States v. Polanco,* 634 F.3d 39, 42 (1ˢᵗ Cir. 2011) (emphasis added). Fletcher was arrested on a warrant for Manslaughter and Trafficking in Scheduled Drugs, the circumstances of which the evidence at the suppression hearing did not reveal. The State offered no evidence to explain the nature of the allegations that resulted in the issuance of the arrest warrant. Nor did the State offer evidence about when the alleged Manslaughter and Trafficking in Scheduled Drug charges occurred or how soon before July 13ᵗʰ, 2016, the alleged conduct occurred. On this record, it is impossible for the court to conclude that there existed a "reasonable basis" to believe that Fletcher's vehicle contained evidence of

Manslaughter or Trafficking in Scheduled Drugs. Accordingly, the court concludes that the State has failed to meet its burden of establishing that the search of Fletcher's vehicle is supported by the *Gant* evidence–preservation justification.

Nonetheless, pursuant to the so-called "automobile exception," the existence of probable cause to believe a vehicle contains evidence of criminal activity justifies a warrantless and reasonable search of a motor vehicle. As noted by the First Circuit in *Polanco*, "the automobile exception is distinct from the evidence-preservation component of *Gant's* search-incident-to-arrest analysis." *Polanco* noted that the "automobile exception extends *beyond the crime of arrest.*" Although the Agents in this case operated on the mistaken belief that they had full authority to search Fletcher's vehicle as a search incident to his arrest on a lawful warrant, the issue for the court is not whether the officers acted on the correct legal standard. The court's focus is on whether the search of the vehicle was supported by probable cause.

A law enforcement officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present. *See, United States v. White*, 804 F.3d 132, 136 (1st Cir. 2015). Probable cause is a fluid concept. *Illinois v. Gates*, 462 U.S. 213, 232, 235, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). The standard is satisfied when the totality of the circumstances create a fair probability that evidence of a crime will be found in a particular place. *White*, 804 F.3d at 136. All that is required is the kind of fair probability on which reasonable and prudent people, not legal technicians, act. *Id.; See*

8

*also United States v. Herrera-Castillo*, 2017 U.S. Dist. LEXIS 4783, 2017 WL 87020 (D.P.R. Jan. 10, 2017).

Again, Agent Bires testified that he searched the vehicle for the following reasons: (1) the existence of the arrest warrant; (2) Fletcher had heroin on his person; (3) Bires believed Fletcher was at that particular residence to sell drugs; and (4) Fletcher was a known trafficker whom MDEA had been investigating for some time. For the reasons already explained, the arrest warrant does not constitute a basis to search the vehicle because the State failed to establish that there was a reason to believe the vehicle contained evidence of the *crime of arrest*. The Court further finds that Agent Bires failed to articulate sufficient facts upon which to base his bold belief that defendants were at the residence to sell drugs. The court further finds that Agent Bires' assertion that Fletcher was a "known trafficker" is not supported by facts that would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present in the vehicle on the date of the search. The agents were engaged in the execution of an arrest warrant, and the totality of the facts and circumstances do not "create a fair probability" that evidence of a crime would be found in the vehicle on that day.

Accordingly, the search must stand, if at all, on whether the contraband found on Fletcher's person by Agent Pineo supports the search of the vehicle. The law has long recognized that the police have probable cause to believe a vehicle contains evidence of a crime if a recent occupant of the vehicle has been found to be in possession of

9

contraband.  Here, the searching Agents Bires and Frost were not aware, however, that the arresting Agent Pineo, had lawfully discovered heroin on Fletcher's person.  There is no question that Agent Pineo himself had authority to search the Fletcher vehicle, but he did not do so.  Though Agents Bires and Frost themselves were unaware of the fruits of the Pineo search, it is necessary to examine the "collective knowledge doctrine".

Under the collective knowledge doctrine, the court can look to the collective knowledge of all the officers involved in a criminal investigation to determine whether an investigatory stop, search, or arrest complies with the Fourth Amendment. *United States v. Ramirez*, 473 F.3d 1026, 1032 (9ⁿ Cir. 2007).  The "focus is upon the collective knowledge possessed by, and the aggregate information available to, all the officers involved in the investigation." *U.S. v. Fiasconaro*, 315 F.3d 28, 36 (1ⁿ Cir. 2002). Probable cause is evaluated by examining the collective information known to the police at the time of the arrest or search, not merely the personal knowledge of the arresting or searching officer. *State v. Carr*, 1997 ME 221, 704 A.2d 353.  Therefore, if the police knowledge is sufficient in its totality to establish probable cause, an individual officer's actions in making a warrantless search *upon orders to do so* will be justified, even though that officer does not personally have all the information on which probable cause is based. *United States v. Meade 110 F.3d 190 (1ⁿCir. 1997)* (emphasis added).

10

Contrary to the broad principles enunciated in *State v. Carr*, 1997 ME 221 and the other cases cited in the preceding paragraph, this court finds that the collective knowledge doctrine requires that the officer who possesses the information which establishes probable cause direct or at least communicate with the searching officer in order for the arresting officer's knowledge to be imputed to the searching officer. As explained by the First Circuit in *Meade*,

> the collective-knowledge corollary of the fellow officer rule would seem to require, or at least presuppose, the flow of information from the officers with knowledge of facts tending to establish probable cause to those lacking that knowledge (or, at least, to the directing or arresting officer). We have not directly addressed the question whether the collective-knowledge rule is limited to situations in which the knowledge vests in a pertinent individual -- such as the directing or arresting officer -- or whether the rule broadly encompasses situations in which the officers or agency as a whole posses the requisite information.

*United States v. Meade*, 110 F.3d 190, 194, 1997 (1st Cir. 1997) (citations omitted).

The *Meade* court, having identified the possible limitation to the "collective knowledge" rule did not, however, decide upon its applicability to the facts of its case. However, even in *Carr*, there was at a minimum radio contact between the officer who possessed the knowledge and the officer who initially did not, such that there was a flow of some information. Admittedly, it is not necessary for the officer who possesses the knowledge to convey to the other officer all of the information that establishes probable cause, but there must be some sort of communication or directive or order so that the imputation of knowledge can occur. Like the First Circuit, our own Law Court in *Carr* recognized that " there may be cases "in which certain police information could

11

not be considered as supportive of probable cause *if not communicated*," noting that this "rule must be applied on a case-by-case basis." *State v. Carr*, 704 A.2d 353, 356 (Me. 1997) citing *State v. Parkinson*, 389 A.2d 1, 8 at n.8 (Me. 1978). See also, United States v. Alix, 630 F. Supp. 2d 145, 154 (D. Mass. 2009), finding stop invalid where there was insufficient evidence that stopping officer was aware of information possessed by other officer who possessed reasonable suspicion, and stating, "[t]here was none of the. "flow of information" that the *Meade* Court indicated buttressed the collective knowledge doctrine."

Since at the time of the search Agents Bires and Frost were unaware that contraband had been found on Fletcher by Agent Pineo, this court finds that the search of the Fletcher vehicle by Agents Bires and Frost was not supported by probable cause. Accordingly, the Defendants' Motions to Suppress are GRANTED.

The Clerk is directed to enter this Order upon the civil docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure

Dated: April 28, 2017

David J. Mitchell
Judge, Maine District Court

12