MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 114
Docket:      Ken-17-492
Argued:      May 15, 2018
Decided:     August 14, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## STATE OF MAINE

v.

## MICHAEL JOURNET

ALEXANDER, J.

[¶1]  Michael Journet appeals from a judgment of conviction entered by the trial court (Kennebec County, *Stanfill, J.*) for aggravated trafficking of scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(B)(1) (2017), following his conditional guilty plea, *see* M.R.U. Crim. P. 11(a)(2).  On appeal, Journet challenges the order of the motion court (*L. Walker, J.*) denying his motion to suppress evidence seized by, and statements made to, the police after he was arrested without a warrant.  Journet argues that the officers lacked probable cause to effectuate a warrantless arrest, and that, as a result of the unlawful arrest, the statements made and evidence seized after the arrest are subject to suppression.  We affirm the judgment.

## I. PROCEDURAL HISTORY

[¶2]  On December 18, 2015, Journet was charged by complaint with two counts of aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S § 1105-A(1)(B)(1) and (H) (2017), and one count of violating a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2017).  On March 24, 2016, he was indicted by the Kennebec County grand jury for the felony charges.  On November 29, 2016, the court conducted a hearing on Journet's motion to suppress the heroin seized and the statements he made to the arresting officers on December 16, 2015.

[¶3]  In its order dated February 9, 2017, the motion court denied Journet's motion and included the following specific findings, all of which are fully supported by the record.  On December 16, 2015, law enforcement officers executed a search warrant at a residence in Augusta.  Illegal drugs were discovered at the residence.  A cooperating individual at the residence advised that his drug supplier would be arriving at the residence that evening— between 5:00 p.m. and 6:00 p.m—to deliver ten grams of heroin.  The cooperating individual told the officers that the dealer was a black male whom he knew as "Troy," that he would be driving a blue BMW SUV and coming from the Portland area, and that "his known practice was to transport heroin inside of his pants."

[¶4]   In its order, the trial court also found that the "cooperating [individual] set up a buy with his supplier . . . memorialized in text communications" and that the detective "observed the sale orchestrated through text message."  Although the record does not specifically support a finding that the detective observed the cooperating individual "set up a buy," it does support the court's finding that a "buy" had been arranged between the cooperating individual and his supplier, and that the officer observed that the buy had been "orchestrated through text message."

[¶5]  At approximately 6:40 p.m., a little later than the time given by the individual at the residence, a blue BMW SUV with a black male driver and a white passenger was seen turning onto the dead-end street.  At that time, law enforcement officers stopped the vehicle.  Journet, the driver of the blue BMW SUV, was arrested and later confessed to the possession of heroin.

[¶6]  Based on these findings, the motion court concluded that, at the time Journet's vehicle was stopped and he was apprehended in the course of committing a felony drug offense, law enforcement officers, collectively, had more than enough information to establish probable cause to stop the vehicle

4

and arrest Journet. After entry of the motion court's decision, no motion for further findings was filed by Journet.[1] *See* M.R.U. Crim. P. 23(c).

[¶7] On September 28, 2017, the court (*Stanfill, J.*) accepted Journet's conditional guilty plea to Count 1, aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(B)(1), pursuant to M.R.U. Crim. P. 11(a)(2). Count 2, the second count for aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(H), was dismissed.[2] On November 1, 2017, the court sentenced Journet to a term of imprisonment of eight years with all but four years suspended, as well as four years of probation and a $400 fine. The execution of the sentence was stayed pending this appeal. On November 9, 2017, Journet timely appealed the denial of his motion to suppress. *See* 15 M.R.S. § 2115 (2017); M.R. App. P. 2A, 2B.

## II. REVIEW OF THE RECORD

[¶8] When a motion court's finding of probable cause is challenged on appeal and there was no motion for further findings after the entry of the motion court's order, we review the evidence in the entire record in the light

---

[1] Following an adverse ruling in which a court states findings, it may be a competent tactical choice not to file a motion for further findings. "Not requesting findings . . . appears a competent tactical choice; a request for findings could have invited adverse findings, fully supported by the record . . . ." *State v. Commeau*, 2004 ME 78, ¶ 21 n.10, 852 A.2d 70.

[2] Count 3 alleging a violation of a condition of release, 15 M.R.S. § 1092(1)(A) (2017), was apparently dismissed.

most favorable to the motion court's order to determine if the findings and conclusions are supported by the record. *See State v. Kierstead*, 2015 ME 45, ¶ 2, 114 A.3d 984.

[¶9]  As Journet points out, the information used by the officers to arrest him came entirely from a cooperating individual that none of the officers involved in Journet's arrest had worked with before.  The discovery of illegal drugs at the cooperating individual's house, however, demonstrated that he was acquiring drugs from someone.  The court found that the cooperating individual identified his dealer as a black man whom he knew as "Troy," who drove a blue BMW SUV, and who would be coming to the residence from the Portland area that very evening.  At the motion hearing, an officer testified that he saw text messages confirming that the heroin delivery described by the cooperating individual was "still good to go" for later that day.

[¶10]  The court's findings are supported by evidence that the involved residence is located on a very short, dead-end street that is accessed from a major street.  Taking advantage of that location, four officers were stationed near the residence to watch for a blue BMW SUV with a black male driver.  Another officer parked his vehicle near the airport on the major street, which one might use when travelling from Portland to the residence, to watch for the vehicle.

[¶11]   At around 6:40 p.m., a little later than the time given by the individual at the residence, a blue BMW SUV with a black male driver and a white passenger drove past the location near the airport.  At that point, the officer near the airport notified the officers near the residence that a blue BMW SUV with a black male driver and a white passenger had just driven by his location.

[¶12]   A detective stationed in a parking lot near the residence received the call and noticed the "same vehicle" pass his location.  After observing the vehicle turn onto the dead-end street and approach the area of the residence, he initiated a traffic stop.  Another officer waiting in his patrol car on the side of the road observed the detective initiate the stop.  The other officer immediately approached the vehicle and, as the BMW was coming to a stop near the residence, he "positioned [his] vehicle in front of it so that after the vehicle was stopped it couldn't . . . go further."

[¶13]   Journet, the driver, was ordered out of the vehicle.  After a pat down search, Journet was handcuffed and transported to the Kennebec County Sheriff's Office.  He later confessed to possession of heroin.  After the arrest, a baggie containing nearly ten grams of heroin was produced by the passenger.

[¶14]  Journet does not appear to contest that, at the time the vehicle was stopped, the officers had reasonable articulable suspicion of criminal activity

sufficient to initiate the stop and question the vehicle occupants. *See State v. Violette*, 2016 ME 65, ¶¶ 3-4, 138 A.3d 491. Journet contends, however, that the police lacked sufficient probable cause to believe that he was engaged in criminal conduct to justify his warrantless arrest.

## III. LEGAL ANALYSIS

[¶15] The standards to support probable cause to arrest are well established. In the circumstances of this case, law enforcement officers may make a warrantless arrest when an officer has probable cause to believe that a person has committed or is committing any Class A, B, or C crime. 17-A M.R.S. § 15(1)(A)(2) (2017); *State v. Lagasse*, 2016 ME 158, ¶ 13, 149 A.3d 1153. "'Probable cause exists where facts and circumstances within the knowledge of the officers and of which they have reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee did commit or is committing the felonious offense.'" *Lagasse*, 2016 ME 158, ¶ 13, 149 A.3d 1153 (quoting *State v. Parkinson*, 389 A.2d 1, 8 (Me. 1978)); *see also Maryland v. Pringle*, 540 U.S. 366, 370-71 (2003).

[¶16] Probable cause includes the collective information known to the police; it is not limited to the personal knowledge of the arresting officer. *Lagasse*, 2016 ME 158, ¶ 14, 149 A.3d 1153; *State v. Carr*, 1997 ME 221, ¶ 7, 704 A.2d 353. Probable cause exists if, based on an objective examination of

the facts known or reasonably believed by the officer or officers, "an ordinarily prudent and cautious officer would have probable cause to arrest or search." *State v. Enggass*, 571 A.2d 823, 825 (Me. 1990) (quoting *State v. Heald*, 314 A.2d 820, 828 (Me. 1973)).

[¶17]  When a finding of probable cause is challenged on appeal and there was no motion for further findings after the entry of the motion court's order, we review the evidence in the entire record in the light most favorable to the motion court's order.  *See Kierstead*, 2015 ME 45, ¶ 2, 114 A.3d 984.  To determine whether the law enforcement officers here had reasonably trustworthy information that would warrant a prudent and cautious officer to believe that Journet did commit or was committing a crime, *see Lagasse*, 2016 ME 158, ¶ 13, 149 A.3d 1153, we look at the record indicating the information the officers had when Journet was stopped and arrested.

[¶18]  The court's findings underlying its determination that probable cause existed are supported by the following evidence in the record and reasonable inferences that may be drawn from that evidence:

- The officers had obtained a warrant based on probable cause to search a residence located on a very short, dead-end street for evidence of illegal drug trafficking.

- Information supporting that probable cause was sufficient for a judicial officer to issue a search warrant for the residence.

- Illegal drugs were found at the residence upon execution of the search warrant.

- The individual at the residence when the search warrant was executed, responding to a suggestion that he cooperate, disclosed that the supplier of the illegal drugs found at the residence was a black man he knew as "Troy."

- The individual also disclosed that the supplier regularly transported illegal drugs to the Augusta area.

- The individual advised that the supplier was planning to arrive at the residence with approximately ten grams of heroin between 5:00 p.m. and 6:00 p.m. that evening.

- The individual then "showed [the officers] text messages that corroborated this information," indicating that the heroin delivery was "good to go" as described to the officers.

- The individual also advised that the supplier would be driving a blue BMW SUV and would be coming from the Portland area.

- At 6:40 p.m., a little after the scheduled arrival time for the drug supplier, a blue BMW SUV driven by a black man drove on the major street that was anticipated to be the likely travel route toward the residence for a vehicle coming from Portland.

- This observation corroborated the individual's statements describing the vehicle, the driver, and the time of arrival.

- That information was further corroborated when the described vehicle— driven by Journet—turned off the major street onto the dead-end side street and approached the residence where illegal drugs had been found earlier in the day.

[¶19] This was the totality of the information that the police possessed at the time Journet was arrested,[3] and it provides more than sufficient support for the officers to determine that they had probable cause to stop and arrest Journet as he approached the residence to complete his heroin delivery.

[¶20] Citing the motion court's reference to the "tipster's anemic resume as an informant," Journet contends that the individual who spoke with the police had insufficient indicia of reliability because the police had not had prior experience with him. However, much of what the individual said was separately corroborated, leading the motion court to conclude that the individual was "providing exceptionally accurate information regarding Mr. Journet."

[¶21] The police raid earlier in the day confirmed that the residence that Journet was approaching was a place of drug trafficking. The individual's statements regarding the plan for Journet to supply drugs to the residence that evening were corroborated by the text messages viewed by the officers. The individual's description of the route Journet might travel from Portland; the make, model, and color of the vehicle Journet would be driving; and the

---

[3] The passenger initially refused to say anything, exercising her right to remain silent, and then began crying and screaming when pressed about whether there were any illegal substances on her person. These facts could also support a determination of probable cause to arrest Journet, but the record is unclear as to whether this event occurred before or after Journet was taken into custody. Therefore, this event was not used by the trial court to support the probable cause determination.

approximate time of Journet's arrival at the residence were all corroborated by the officers' observations leading to the vehicle stop on the dead-end street near the residence.

[¶22] As already noted, probable cause to arrest without a warrant exists when the facts and circumstances collectively known to the police, and of which they have reasonably trustworthy information, would warrant a prudent and cautious person to believe that the arrestee did commit or was committing a crime. *Lagasse*, 2016 ME 158, ¶¶ 13-14, 149 A.3d 1153; *Carr*, 1997 ME 221, ¶ 7, 704 A.2d 353. The probable cause standard was satisfied here where, as the court found, the information stated by the individual pointing to Journet as the drug supplier was corroborated by the evidence in the record as described above.

[¶23] Because there was sufficient corroborated information to warrant any prudent and cautious person to believe that Journet was committing the offense of heroin trafficking, a felony, the trial court's denial of the motion to suppress must be affirmed.

The entry is:

Judgment affirmed.

Leonard I. Sharon, Esq. (orally), Andrucki & King, Lewiston, and Jamesa J. Drake, Esq., Drake Law, LLC, Auburn, for appellant Michael Journet

Maeghan Maloney, District Attorney, and Tyler J. LeClair, Asst. Dist. Atty. (orally), Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2015-2430
FOR CLERK REFERENCE ONLY